**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**PATRICK FLEMING,**

    *Plaintiff,*

    -against-

**TOWN OF EAST FISHKILL**;
**EAST FISHKILL POLICE DEPARTMENT** ("EFPD");
EFPD Officers in their individual and official capacities
including: **CHRISTOPHER BELLINO**, Chief; **JUSTINO**
**BERMUDEZ**, Sgt.; **BRET A. FINLANCIA**, Officer;
**ALEXANDER J. HUMPHREYS**, Sgt.; **MATTHEW C.**
**MALICAN**, Officer; **GREGORY M. STANIS**, Lt.;
**ALBERT J. TAURONE**, Officer; **BRENDAN J. WHITE**,
Officer; and **John/Jane Does 1–10**;

**COUNTY OF DUTCHESS**; **DUTCHESS COUNTY**
**SHERIFF'S OFFICE** ("DCSO"); DCSO Deputies in their
individual and official capacities, including: **JAMES G.**
**FLANAGAN**, Det.; **KIRK A. IMPERATI**, Sheriff;
**JONATHAN T. SNOWDON**, Sgt.; and **John/Jane Does 11-20**;
**JEANINE A. DEVALL**, private actor;
**KEVIN M. MACKAY**, private actor,

    *Defendants.*

Civil Action No.: _____

JURY TRIAL DEMANDED

---

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** (42 U.S.C. §§ 1983, 1985, 1986)
**AND SUPPLEMENTAL STATE CLAIMS** (New York Law)

---

**PRELIMINARY STATEMENT ACTION**

1.    Plaintiff Patrick Fleming brings this action under 42 U.S.C. § 1983, 42 U.S.C. §§ 1985 and

1986, and New York law to redress defendants' conduct in dispossessing and excluding

Plaintiff from his home and interfering with his possessory rights and related liberties.

Defendants physically barred Plaintiff's reentry to his home, threatened arrest for trespass in

the absence of a court order, refused to recognize Plaintiff's lawful occupancy and proof of

residency, and otherwise aided and abetted private actors who enforced a self-help lockout and

procured or relied upon distinctive misrepresentations and judicial process to achieve collateral

objectives.

2.    As alleged below, the unlawful conduct included unreasonable seizure of property and

possessory interests (Fourth Amendment), deprivation of procedural due process (Fourteenth

Amendment), conspiracy to deprive civil rights (42 U.S.C. § 1985), and failures to prevent

those conspiracies (42 U.S.C. § 1986).  Plaintiff also asserts municipal liability under Monell

for policies, customs, and training failures that caused or ratified constitutional violations, and

a host of state-law claims including unlawful eviction/trespass, defamation, civil conspiracy,

fraud, private nuisance, intentional infliction of emotional distress, and remedies under RPAPL

§§ 711, 768, and 853.

3.    Defendants—municipal entities, law enforcement officers, and private actors—acted under

color of law and in concert to: (a) enforce and maintain an eviction by lockout without judicial

process; (b) threaten Plaintiff with arrest for trespass despite his documented lawful

occupancy; and (c) procure and then repeatedly extend an ex parte Temporary Order of

Protection (TOP) to perpetuate Plaintiff's dispossession for more than 1,000 days without a

meaningful hearing.

**JURISDICTION AND VENUE**

**4.**     This action arises under 42 U.S.C. §§ 1983, 1985, and 1986 and the First, Fourth, and

Fourteenth Amendments to the United States Constitution.  The Court has federal-question

jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over related state-law claims

pursuant to 28 U.S.C. § 1367.

**5.**     Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to

this action occurred in the Southern District of New York (or the relevant judicial venue as

alleged in the operative pleadings), and the defendants are subject to personal jurisdiction in

this District.

**PARTIES**

**Plaintiff**

**6.**     Patrick Fleming is a resident of New York State and, at all relevant times, was a lawful

occupant of the residence located at 40 Clearview Circle, Hopewell Junction, New York (the

"Residence").

**Defendants**

**7.**     Defendant Town of East Fishkill is a New York municipal corporation.  The East Fishkill

Police Department (EFPD) is an administrative arm of the Town.  The Town is the real party in

interest for official-capacity claims against EFPD officers and personnel.

**8.**      Defendants Christopher Bellino (Chief), Justino Bermudez (Sgt.), Bret A. Finlancia

(Police Officer), Alexander J. Humphreys (Sgt.), Matthew C. Malican (Police Officer),

Gregory M. Stanis (Lt.), Albert J. Taurone (Police Officer), Brendan J. White (Police Officer),

and John/Jane Does 11–20 were, at all relevant times, EFPD officers acting under color of state

law within the scope of their employment. They are sued in their individual and official capacities.

9.  Defendant County of Dutchess is a New York municipal corporation. The Dutchess County Sheriff's Office ("DCSO")) is an administrative arm of the County. The County is the real party in interest for official-capacity claims against DCSO officers and personnel.

10.  Defendants Kirk A. Imperati (Sheriff), James G. Flanagan (Detective), Jonathan T. Snowdon (Sgt.), and John/Jane Does 21–30 were, at all relevant times, DCSO personnel acting under color of state law within the scope of their employment. They are sued in their individual and official capacities.

11.  Defendant Jeanine A. DeVall ("DeVall") is a private individual who cohabited with Plaintiff since 2014, holds title to the Residence at issue, and who acting in concert with law enforcement and MacKay, participated in the unlawful exclusion and continued deprivation of Plaintiff's liberty, possessory, and property interests.

12.  Defendant Kevin M. MacKay ("MacKay") is a private individual and attorney licensed in New York, who advised DeVall, and communicated, directed, and acted in concert with law enforcement and DeVall, to dispossess Plaintiff from the Residence, and participated in the procurement and maintenance of process to perpetuate the exclusion and deprivation of Plaintiff's rights.

## FACTUAL ALLEGATIONS

13.  Plaintiff incorporates by reference the foregoing paragraphs and alleges as follows.

14.  At all relevant times Plaintiff was a lawful occupant of the Residence (the home at issue) and had lawful possession, a license coupled with an interest, or an irrevocable license with an equitable interest arising from substantial capital improvements or other equitable grounds.

15.    Defendants DeVall and MacKay (private actors) engaged in self-help eviction conduct by changing locks and/or physically barring Plaintiff's reentry to the Residence, and by procuring, obtaining, or attempting to use court process (including a Temporary Order of Protection ("TOP")) to bar Plaintiff's access.

16.    Defendants DeVall and MacKay made misrepresentations to law enforcement and/or the courts (including misrepresenting the circumstances of Plaintiff's vacatur or occupancy) which resulted in restrictions on Plaintiff's access to his home (including the use by DeVall of a TOP).

17.    EFPD and DCSO officers (and their supervisors) responded to the lockout and the dispute, and either directly enforced or acquiesced in the self-help lockout by physically preventing Plaintiff's reentry, threatening arrest for trespass absent any eviction warrant or court order, refusing to recognize Plaintiff's proof of residency and possessory interest, and/or relying on misrepresentations made by the private actors.

18.    The self-help lockout deprived Plaintiff of possession and forced him to incur substantial alternative housing expenses, loss of access to the home and personal property, loss of equity, and emotional injury and reputational harm.  Plaintiff seeks compensatory, consequential, statutory, treble (where authorized), and punitive damages (against individuals and private defendants), and equitable relief.

19.    Defendants acted under color of state law (including when private actors acted jointly with or procured action by state actors), and at least one overt act occurred in furtherance of a conspiracy to deprive Plaintiff of his federally protected rights.

20.    Defendants EFPD and DCSO maintained policies, practices, or customs—actual or de facto—including treating co-occupant lockouts as private matters to be enforced by arrest

threats for trespass irrespective of lawful occupancy; failing to adopt or implement policies and

training consistent with RPAPL § 768 and New York Attorney General guidance on unlawful

evictions; failing to train officers to investigate and protect occupants from self-help residential

lockouts; and ratifying or acquiescing in officers' refusal to recognize proof of residency and

threats of arrest absent a court order. These policies, customs, or practices caused the

deprivation of Plaintiff's constitutional rights.

21.    Defendants who knew of the conspiracy to deprive Plaintiff of rights had the power to

prevent it and failed to do so.

### Factual Background

22.    Since 2014, Plaintiff and DeVall cohabited as intimate partners in an exclusive marital-type

relationship, pooling resources, and sharing financial, emotional, and social interdependence.

23.    In 2015, Plaintiff and DeVall conceived a child.  Plaintiff has served as the child's primary

caregiver since 2015.

24.     Plaintiff and DeVall co-mingled finances, shared bank accounts, debts, leases, and jointly

owned vehicles, including a 2013 Hyundai Santa Fe and a 2010 BMW 528.

25.     On October 7, 2020, Plaintiff and DeVall acquired the Residence as their family home.

Title was placed in DeVall's name based on the parties' relationship of trust and understanding

that Plaintiff would share in the beneficial ownership and occupancy.

26.     Plaintiff contributed approximately $150,000 + in funds, materials, contractor payments,

utilities, and extensive labor to acquire, improve, and maintain the Residence, including capital

improvements and carrying charges,

27.     Plaintiff maintained his home office, personal property, mail, driver's license, vehicle

registration, and tax filings at the Residence, reflecting lawful occupancy.

**Self-Help Lockout and Immediate Police Involvement**

28.   On or about May, 2022, the relationship broke down and DeVall asked Plaintiff to vacate the Residence.  Plaintiff declined to vacate absent a written agreement or court order.

29.   On or about June 15th, 2022, DeVall retained attorney MacKay to resolve her "Constructive Trust" liability to Plaintiff and for a Family Court action.

30.   On or about June 28, 2022, MacKay drafted a "Notice to Quit and Terminate License" ("NTQ") which DeVall served on Plaintiff attempting to remove Plaintiff without judicial process.

31.   Plaintiff declined to terminate his occupancy absent a written agreement or court order.

32.   On or about September 1, 2022, DeVall unilaterally changed the locks and disabled Plaintiff's garage door opener to exclude him, without a warrant of eviction, court order, or a written agreement.

33.   Plaintiff did not acquiesce to the DeVall's lawless action.

34.   Plaintiff did not receive any consideration from DeVall in exchange for being excluded.

35.   Plaintiff's belongings remained inside; he maintained utilities and documentation tying him to the address of the Residence; and he sought assistance from the Defendant's to restore his access.

36.   On September 12, 2022, after Plaintiff regained access to the Residence, DeVall filed a report with EFPD informing them she "filed" a Notice to Quit which terminated Plaintiff from the Residence.

37.   In response to calls on September 24, 2022 (EFPD Call Nos. 22-16130 and 22-16143), EFPD officers (Stanis, Taurone, and White) responded to the Residence.  Plaintiff presented

his New York driver's license, vehicle registration, and recent mail reflecting the Residence address.

**38.**    EFPD records reflect that responding officers ran Plaintiff's vehicle registration, which matched his name and the Residence address.

**39.**    EFPD officers nevertheless refused to restore access, stated they would enforce the NTQ, and threatened arrest for trespass if Plaintiff attempted to re-enter without a court order.

**40.**    EFPD officers and MacKay advised DeVall to seek a Temporary Order of Protection (TOP) in Family Court to exclude Plaintiff, and EFPD communications reflect reliance on attorney MacKay's advice regarding use of the NTQ and the purported lawfulness of the lockout.

**Attorney Involvement; Refusal to Investigate Unlawful Eviction**

**41.**    On September 25, 2022, at EFPD headquarters, Plaintiff requested assistance to restore occupancy under RPAPL § 768 or to file a criminal complaint and Domestic Incident Report (DIR) concerning the unlawful eviction.  EFPD personnel refused assistance and declined to accept Plaintiff's provided New York Attorney General guidance on unlawful evictions.

**42.**    On September 26, 2022, DeVall filed a Family Offense Petition ("FOP") seeking an ex parte Temporary Order of Protection (TOP) to exclude Plaintiff from the Residence.

**43.**    During the ex parte hearing, DeVall testified that both EFPD and MacKay instructed her to file the TOP to prevent Plaintiff from occupying the Residence.  The Family Court Referee admonished DeVall that the lockout was a housing matter and denied relief.

**44.**    Despite the Referee's admonition, EFPD continued to treat the lockout as enforceable against Plaintiff absent an eviction order, repeating that Plaintiff was not on the title or married to DeVall, and relying on MacKay's advice.

45.    On September 29, 2022, Plaintiff informed MacKay that EFPD was relying on his credentials as a former Dutchess County assistant district attorney to enforce the Notice to the Notice to Quit letter as if it was court order; and asked him to take corrective action.

46.    On October 12, 2022, Plaintiff attempted to finalize a DIR and pursue criminal charges regarding the unlawful eviction (RPAPL 768).  During this meeting, PO White confirmed he spoke with MacKay and DeVall and they had established a new theory that Plaintiff "voluntarily" abandoned the Residence.

47.    Plaintiff sought to submit a sworn statement contradicting the "voluntary abandonment" theory but EFPD refused him and refused to obtain a sworn statement from DeVall.

48.    PO White stated that regardless of voluntariness, Plaintiff was barred from returning because he was not married to DeVall and because MacKay advised him the NTQ was equivalent to a court order or obviated the necessity for a judicial order.

49.    On October 13, 2022, Plaintiff asked PO White to transfer the investigation to a supervisor due to his apparent bias

50.    On or about October 17, 2022, the New York State Office of the Attorney General (NYS OAG) issued its second memorandum to law enforcement regarding unlawful evictions under RPAPL § 768.  The memo advises law enforcement that unlawful evictions are a criminal matter, directs them to play an active role in enforcing the law, and requires them to restore lawful occupants to their homes when possible.

51.    On or about October 19, 2022, PO White issued an official written statement (Ref: 22-953-OF) stating Plaintiff's eviction was "voluntary."

**52.**   PO White's narrative omitted material facts, included knowingly false or misleading statements, resolved disputed facts in favor of DeVall, and made legal conclusions in violation of Plaintiff's rights.

**53.**   PO White's narrative included his opinion that Plaintiff engaged or intended to engage in criminal conduct.

**54.**   On or about October 20, 2022, EFPD Sgt. Humphreys was assigned the matter.

**55.**   Sgt. Humphreys accepted PO White's narrative as a factual conclusion without contacting Plaintiff or DeVall.

**56.**   On or about October 25 and 26, 2022, Plaintiff asked EFPD Lt. Stanis for assistance with the unlawful eviction.

**57.**   On or about October 26, 2022, PO Humphreys contacted the Dutchess County Sheriff's Office civil division, which confirmed that DeVall would not need to an eviction warrant if Plaintiff "voluntarily" vacated the Residence.

**58.**   On October 27, 2022, Sgt. Snowdon of the Dutchess County Sheriff's Office ("DCSO") responded to an inquiry Plaintiff submitted to their office days prior regarding to their enforcement of RPAPL § 768.  Sgt. Snowdon confirmed that only a court order could terminate Plaintiff's occupancy, but it was DCSO policy not to restore victims unlawfully evicted nor enforce the unlawful eviction law against those who violate it.

**59.**   Later that day, Plaintiff filed a DIR containing a sworn statement with DCSO Det. Flanagan and urged him to conduct an independent investigation due EFPD relying on MacKay's advice instead of the RPAPL statute.

60.   Flanagan did not contact or obtain a sworn statement from DeVall.  Instead, he contacted

EFPD, accepted their narrative, and closed his investigation in favor of DeVall, which

continued Plaintiff's exclusion from the Residence.

61.   On October 28, 2022, Plaintiff filed a claim with the New York State Office of Victim

Services (NYS OVS) and included the DCSO DIR reference number.

62.   Plaintiff's NYS OVS claim was subsequently denied.  On information and belief, it was

due to Flanagan concluding his investigation based according to EFPD's narrative.

63.   On November 5, 2022, Plaintiff contacted PO Humphreys to contest his reliance on PO

White's narrative because it was misleading, omitted material facts, and asked to submit a

sworn statement contradicting PO White's narrative.

### Use of Judicial Process to Maintain the Lockout

64.   On November 10, 2022, Plaintiff and DeVall had their first child custody appearance

before Judge Tracy C. MacKenzie of the Dutchess County Family Court.

65.   On November 11, 2022, Plaintiff requested from EFPD a copy of all telephonic recordings

between EFPD, MacKay, and DeVall regarding his dispute.  He was given an inoperable

compact-disk in return.

66.   Before the appearance, Plaintiff encountered MacKay in the parking lot, introduced

himself, and reminded MacKay of their prior client-attorney relationship.

67.   During that appearance, MacKay falsely told Judge MacKenzie that Plaintiff voluntarily

abandoned his home, referenced Plaintiff's unmarried status with DeVall, and omitted his prior

client-attorney relationship with Plaintiff.

**68.**   On November 11, 2022, DeVall reported to EFPD that Plaintiff stole "her" Hyundai and

may have broken-in to "her" home.   EFPD POs DiDato and Finlancia responded and

performed a warrantless search of the Residence looking to seize Plaintiff.

**69.**   On November 14, 2022, Plaintiff sent DeVall documentary proof of his co-ownership of

the Hyundai, which she confirmed receiving.

**70.**   Later that evening, DeVall went to EFPD to pursue criminal charges and obtain an *ex parte*

TOP against Plaintiff.

**71.**   At approximately 9:19pm, DeVall completed and signed under penalty of perjury, a

Domestic Incident Report (DIR) and a Supporting Deposition containing knowingly false

misrepresentations and material omissions, including that Plaintiff stole "her" Hyundai which

she was the sole owner of and she wanted a TOP because she feared he may break into "her"

home.  PO DiDato signed her documents as a witness.

**72.**   On November 15, 2022, DeVall emailed PO DiDato a copy of the Hyundai title listing

Plaintiff as co-owner but did not retract her prior false statements.

**73.**   On November 16, 2022, DeVall, with assistance from MacKay, submitted a second Family

Offense Petition (FOP) including her DIR, Supporting Deposition, and officer narratives from

PO White and PO Humphreys.  Her FOP included the false allegations that Plaintiff stole "her"

Hyundai which she was the "sole owner" of.

**74.**   Based on those pleadings, DeVall obtained a full "stay-away" and a "no-contact" ex parte

Temporary Order of Protection (TOP).

**75.**   The TOP excludes Plaintiff from the Residence, his personal property, and precludes him

from using the co-owned Hyundai.

**76.**   The speech content prohibition bars all communications from Plaintiff to DeVall or

MacKay except those related to child exchange coordination.

**77.**   The initial TOP was for seven (7) months.

**78.**   Plaintiff filed multiple pleadings challenging the allegations to have the TOP/FOP

dismissed or a prompt fact-finding.  DeVall opposed Plaintiff's requests and pursuant to her

request, Family Court denied Plaintiff.

**79.**   DeVall requested to extend/renew the ex parte TOP approximately six (6) times (over

1,000 days) which Family Court granted based on the DeVall's original FOP papers.

**80.**   On November 30, 2022, at a Family Court appearance, MacKay again falsely informed the

Court that Plaintiff involuntarily vacated his home and repeated misleading statements from

PO White's narrative.

**81.**   On January 22, 2023, Plaintiff notified MacKay of his duty to be truthful to the Court,

requested corrective action, and warned of a forthcoming motion for sanctions under 22

NYCRR § 130-1.1.

**82.**   On February 24, 2023, Plaintiff informed PO DiDato and Sgt. Bermudez that DeVall

obtained a TOP based on knowingly false statements and asked to pursue criminal charges

against DeVall and MacKay for the unlawful eviction scheme.  They declined to assist.

**83.**   On March 31, 2023, over Plaintiff's objection, DeVall via MacKay extended the ex parte

TOP until August 16, 2023.

**84.**   On July 5, 2023, Plaintiff, through counsel, filed a motion to dismiss the TOP/FOP and was

denied due to DeVall opposing the relief.

**85.**   On July 6, 2023, DeVall filed a Violation Petition ("VP") of the *ex parte* Temporary Order

of Protection against Plaintiff for allegedly communicating speech content prohibited by the

Order.  Plaintiff is liable to be punished by up to six (6) months of imprisonment for each content infraction.

86.    Starting July 7, 2023, Plaintiff contacted DCSO, Sheriff Imperati, and other deputies for assistance with his unlawful eviction complaint filed October 27, 2022.

87.    On July 24, 2023, MacKay submitted an Affirmation in Opposition to Family Court which he repeated the false statement that Plaintiff voluntarily vacated the Residence and he included misleading statements from EFPD narratives to substantiate the false representation.

88.    On November 9, 2023, DeVall and MacKay issued knowingly false statements to the Family Court including that Plaintiff sent the child to school with a fever, abandoned the child at a soccer practice, and recorded a video of the child discussing summer vacation plans to maliciously hurt DeVall.  As a result of these false representations, Family Court granted DeVall sole custody of the child which continues to present.

89.    On November 18, 2024, at a Family Court hearing, DeVall threatened to punish Plaintiff with imprisonment if found guilty of the speech content infractions unless Plaintiff forgo his petition for equal custody and agree to an additional two (2) year Order of Protection ("OP") to continue his exclusion from the Residence to prevent him from communicating a large swath of lawful speech including discussions regarding their joint assets or his property interests.

90.    At the November 18, 2024, DeVall called PO White to testify on her behalf.  PO White repeated the false voluntary vacancy theory and alleged Plaintiff had engaged or intended to engage in unlawful conduct but for his intervention.

91.    On or about December 10, 2024, MacKay falsely told Family Court that DeVall did not need an eviction warrant because Plaintiff voluntarily vacated the Residence.

92.   The Dutchess County Family Court proceedings for custody, the FOP, the TOP, and the

Violation Petition (VP) of the TOP are still pending.


**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourth Amendment Unreasonable Seizure and Fourteenth Amendment Procedural Due Process; against EFPD Officers, DCSO Deputies, and Municipal Defendants; and Against DeVall and MacKay as Joint Actors**

93.   Plaintiff incorporates paragraphs 1–92.

94.   By physically barring re-entry, threatening arrest for trespass absent judicial process, refusing to recognize Plaintiff's lawful occupancy despite documentary proof, and maintaining an exclusion without court order prior to November 16, 2022, EFPD officers and any involved DCSO personnel effected an unreasonable seizure of Plaintiff's possessory interests and personal property in violation of the Fourth Amendment.  See *Soldal v. Cook County*, 506 U.S. 56 (1992).

95.   Defendants deprived Plaintiff of procedural due process by enforcing a self-help lockout without pre-deprivation process and then maintaining a prolonged exclusion through serial TOP extensions without a prompt, meaningful hearing in violation of the Fourteenth Amendment.  See *Fuentes v. Shevin*, 407 U.S. 67 (1972).

96.   DeVall and MacKay acted jointly with state actors and willfully participated in the challenged conduct, acting under color of state law.  See *Dennis v. Sparks*, 449 U.S. 24 (1980).

97.   As a proximate result, Plaintiff suffered damages including prolonged loss of access to his home and property, alternative housing costs, emotional distress, and other harms.

98.    To the extent any restraints on Plaintiff's speech or association were imposed beyond what was necessary for public safety (including any blanket ban in the TOP), Defendants imposed overbroad restrictions in violation of the First Amendment (Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002)).

99.    Defendants' conduct was intentional, willful, malicious, reckless, and/or in reckless disregard of Plaintiff's constitutional rights, entitling Plaintiff to compensatory and punitive damages and equitable relief.


**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Monell Liability (Policy, Custom, Failure to Train/Supervise); Against Town of East Fishkill and County of Dutchess**

100.    Plaintiff incorporates paragraphs 1–99.

101.    The constitutional violations described herein were caused by, and were the moving force behind, policies, customs, patterns, or practices of EFPD and DCSO, including but not limited to:

   **a**. Treating co-occupant lockouts as private matters to be enforced by arrest threats for trespass regardless of lawful occupancy and without judicial eviction process;

   **b**. Failing to adopt and implement policies and training consistent with RPAPL § 768 and New York Attorney General guidance on unlawful evictions;

   **c**. Failing to train officers to investigate and protect occupants from self-help residential lockouts;

   **d**. Ratifying or acquiescing in officers' refusal to recognize proof of residency and threats of arrest in the absence of a court order.

102.    EFPD and DCSO acted with deliberate indifference to the known, obvious need to train and supervise officers on unlawful evictions and co-occupant disputes, foreseeably leading to constitutional violations (City of Canton v. Harris, 489 U.S. 378 (1989)).

**103.**    As a direct and proximate result of Defendants' municipal policies and deliberate

indifference, Plaintiff suffered the injuries described herein.

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1985(3) – Conspiracy to Interfere with Civil Rights; Against All Defendants**

**104.**    Plaintiff incorporates paragraphs 1–103.

**105.**    Defendants reached an agreement, combination, or understanding to deprive Plaintiff of the

equal protection of the laws and equal privileges and immunities secured by law by

maintaining his exclusion from his home through self-help and threats of arrest, and by using

judicial process primarily to achieve collateral objectives unrelated to legitimate protective

aims (Griffin v. Breckenridge, 403 U.S. 88 (1971)).

**106.**    Defendants who knew of the § 1985 conspiracy and had the power to prevent or aid in

preventing the commission of the wrongs described herein failed to do so, notwithstanding

their ability, legal obligation, and opportunity to act.

**107.**    As a direct and proximate result of such failure to act, Plaintiff suffered the injuries

described above.

**FOURTH CLAIM FOR RELIEF**

**42 U.S.C. § 1986 – Neglect to Prevent; Against EFPD Officers and DCSO Deputies,**

**Including Supervisors, in Their Individual Capacities**

**108.**    Plaintiff incorporates paragraphs 1-107.

**109.**    Defendants knew of the § 1985 conspiracy and had the power to prevent or aid in

prevention but failed to do so despite the ability and duty to act.

**110.**    Plaintiff suffered damages as a result.

**FIFTH CLAIM FOR RELIEF**

**Civil Conspiracy (New York Law); Against All Defendants**

**111.**    Plaintiff incorporates paragraphs 1–110.

**112.**    Defendants agreed and acted in concert to commit unlawful acts and/or to commit lawful

acts by unlawful means, including unlawful eviction, conversion, defamation, fraud, abuse of

process, and intentional infliction of emotional distress.

**113.**    At least one overt act was committed in furtherance of the conspiracy, and Plaintiff was

damaged as a result.

**SIXTH CLAIM FOR RELIEF**

**Defamation (Libel and Slander Per Se); (New York Law); Against DeVall and MacKay;**

**and Against Any Officer Who Republished Outside Official Duties**)

**114.**    Plaintiff incorporates paragraphs 1–113.

**115.**    DeVall and MacKay published false statements regarding Plaintiff's conduct and/or

vacatur that were defamatory per se, including false accusations of criminality or other

misconduct which harmed Plaintiff's reputation, occupation, and standing, caused humiliation,

emotional distress, and resulted in damages.

**116.**    EFPD Officers are additionally liable to the extent they republished such statements outside

the scope of their official duties.

**SEVENTH CLAIM FOR RELIEF**

**Fraud and Constructive Fraud (New York Law); Against DeVall and MacKay**

**117.**    Plaintiff incorporates paragraphs 1–116.

**118.**     Defendants knowingly made material misrepresentations of present fact, including that

Plaintiff voluntarily vacated and engaged in criminal conduct; omitted material facts (RPAPL §

768 and Attorney General guidance; the Family Court Referee's admonition); and intended law enforcement and the court to rely on those misstatements/omissions.

119.    Law enforcement and the court reasonably relied to Plaintiff's detriment, causing damages.

**EIGHTH CLAIM FOR RELIEF**

**Unjust Enrichment/Quantum Meruit (New York Law); Against DeVall**

120.    Plaintiff incorporates paragraphs 1–119.

121.    Plaintiff conferred substantial benefits on DeVall through monetary contributions and labor improving the Residence.

122.    DeVall accepted and retained these benefits under circumstances that make it inequitable for her to retain them without compensating Plaintiff, causing damages.

**NINTH CLAIM FOR RELIEF**

**Breach of Joint Venture Agreement (New York Law); Against DeVall**

123.    Plaintiff incorporates paragraphs 1–122.

124.    Plaintiff and DeVall entered an oral/implied joint venture to acquire, maintain, and improve the Residence as their family home and to share benefits and obligations.

125.    Plaintiff performed; DeVall breached by excluding Plaintiff and failing to account or distribute benefits, causing damages.

**TENTH CLAIM FOR RELIEF**

**Malicious Prosecution (New York Law); Against DeVall and MacKay; and EFPD (to the Extent of Initiation/Continuation, and Contribution)**

126.    Plaintiff incorporates paragraphs 1–125.

127.    Defendants initiated/continued judicial process (including FOP/TOP) against Plaintiff without probable cause and with malice, resulting in a post-process restraint and damages.

Any related proceedings terminated in Plaintiff's favor are so pleaded, and this claim is preserved upon favorable termination as applicable.

**ELEVENTH CLAIM FOR RELIEF**

**Abuse of Process (New York Law); Against DeVall and MacKay**

**128.** Plaintiff incorporates paragraphs 1–127.

**129.** Defendants used regularly issued process (FOP/TOP) in a perverted manner to effect and maintain a lockout and dispossession to obtain collateral objectives, causing damages.

**TWELFTH CLAIM FOR RELIEF**

**Conversion (New York Law); Against DeVall; and any Defendant Exercising Dominion Over Plaintiff's Property**

**130.** Plaintiff incorporates paragraphs 1–129.

**131.** Plaintiff owns or has a superior possessory right to personal property at the Residence and to use/enjoy improvements there. Defendants exercised unauthorized dominion or control interfering with Plaintiff's rights, causing damages.

**THIRTEENTH CLAIM FOR RELIEF**

**Accounting (New York Law); Against DeVall**

**132.** Plaintiff incorporates paragraphs 1–131.

**133.** A confidential or fiduciary relationship and/or joint venture exists concerning the Residence and related assets. Equity requires an accounting of contributions, expenditures, and benefits.

**FOURTEENTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty and Aiding and Abetting (New York Law); Against DeVall; and Against MacKay for Aiding and Abetting**

**134.**    Plaintiff incorporates paragraphs 1–133.

**135.**    DeVall owed fiduciary duties arising from a confidential relationship/joint venture, which she breached by excluding Plaintiff, misappropriating benefits, and failing to account. MacKay knowingly provided substantial assistance.  Plaintiff suffered damages.

**FIFTEENTH CLAIM FOR RELIEF**
**Private Nuisance (New York Law); Against DeVall**

**136.**    Plaintiff incorporates paragraphs 1–135.

**137.**    DeVall intentionally and unreasonably interfered with Plaintiff's use and enjoyment of the Residence through lockouts, threats, and obstruction, causing substantial harm.

**SIXTEENTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress (New York Law); Against All Defendants**

**138.**    Plaintiff incorporates paragraphs 1–137.

**139.**    Defendants engaged in extreme and outrageous conduct, including self-help eviction, forced expulsion from his home, false or misleading accusations of criminality, threats of arrest absent legal process, prolonged deprivation of liberty and exclusion from home and property, and intentionally or recklessly caused severe emotional distress.

**140.**    As a result of Defendants' conduct, Plaintiff suffered severe emotional distress and damages.

**SEVENTEENTH CLAIM FOR RELIEF**
**Wrongful/Unlawful Eviction and Trespass; Treble Damages (RPAPL §§ 711, 768, 853); Against DeVall, MacKay, EFPD, DCSO, and All Defendants who Aided and Abetted**

**141.**    Plaintiff incorporates paragraphs 1–140.

142.    At the time of the lock change and exclusion, Plaintiff was a lawful occupant with a license
coupled with an interest and/or an irrevocable license by estoppel grounded in substantial
contributions and cohabitation.  Defendants dispossessed Plaintiff without a warrant of eviction
or court order in violation of New York law.

143.    Plaintiff is entitled to statutory relief, including treble damages under RPAPL §§ 768, 85,
and related remedies.

**EIGHTEENTH CLAIM FOR RELIEF**
**Constructive Trust (New York Law); Against DeVall**

144.    Plaintiff incorporates paragraphs 1–143.

145.    Equity requires imposition of a constructive trust over the Residence and related proceeds
to prevent unjust enrichment, given: (a) a confidential relationship; (b) a promise express or
implied that Plaintiff's contributions would be recognized and the Residence would be the
family home; (c) transfers in reliance; and (d) unjust enrichment.

**NINETEENTH CLAIM FOR RELIEF**
**Attorney Deceit, Collusion, and Fraud on the Court (Pursuant to N.Y. Jud.  Law § 487);**
**Against MacKay**

146.    Plaintiff incorporates paragraphs 1–145.

147.    MacKay, in a judicial proceeding, engaged in deceit or collusion with intent to deceive the
court or a party by making knowingly false material statements and by omissions calculated to
mislead, including the filing and maintenance of a Family Offense Petition (FOP) on DeVall's
behalf to procure and maintain an *ex parte* Temporary Order of Protection to perpetuate
Plaintiff's exclusion, prevent him from communicating with DeVall to resolve their joint
assets, and causing him other damages.

**CONDITIONS PRECEDENT; NOTICE OF CLAIMS**

**148.**     To the extent New York General Municipal Law §§ 50-e and 50-i apply to supplemental

state-law tort claims against municipal entities, Plaintiff has or will comply, compliance is

inapplicable to federal and equitable claims, or compliance is excused.  Plaintiff will amend as

appropriate to reflect compliance and to identify proper municipal entities based on

disclosures.

**DAMAGES**

**149.**     As a direct and proximate result of Defendants' conduct, since on or about November

16, 2022, Plaintiff has suffered and continues to suffer damages including but not limited to:

loss of access to and use of his home; deprivation and/or loss of personal property; out-of-

pocket expenses and alternative housing costs exceeding $100,000; lost equity and

investments; severe emotional distress; reputational harm; diminished custodial rights; and the

ongoing deprivation of his constitutional rights.  Plaintiff seeks compensatory, consequential,

statutory, treble (where authorized), and punitive damages (against individual and private

defendants), as well as equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor

and grant the following relief:

**a.**  Enter judgment in Plaintiff's favor and against all Defendants on all counts;

**b.**  Compensatory, consequential, statutory, and where authorized, treble damages where

authorized (including under RPAPL provisions) in an amount to be determined at trial

for Plaintiff's economic and non-economic losses, including but not limited to loss of

access to and use of his home; deprivation and/or loss of personal property; out-of-pocket expenses and alternative housing costs exceeding $100,000; lost equity and investments; emotional distress; loss of wages, and reputational harm;

**c.** Punitive damages against individual and private defendants as permitted by law;

**d.** Declaratory judgment affirming Plaintiff's lawful occupancy rights at the Residence unless and until terminated by lawful judicial process;

**e.** Equitable relief, including injunctive relief to restore Plaintiff's access to the Residence and to prevent Defendants from continuing to maintain an unlawful policy or practice of arresting or threatening to arrest lawful occupants of a dwelling until their occupancy is terminated by lawful judicial process; and such other equitable relief as is just;

**f.** Imposition of a constructive trust and/or equitable lien on the Residence and/or its proceeds, and an accounting of contributions, expenditures, and benefits;

**g.** Order the Defendants to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein and consistent with RPAPL § 768;

**h.** Order an accounting of all contributions, expenditures, and benefits relating to the Residence and any jointly accumulated assets;

**i.** Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

**j.** Pre- and post-judgment interest; and

**k.** Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

**PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, Plaintiff certifies that the complaint is not presented for an improper purpose, that the claims are supported by existing law or a nonfrivolous argument for changing the law, that the factual contentions have evidentiary support or will likely have support after discovery, and that the complaint otherwise complies with Fed. R. Civ. P. 11.  Plaintiff agrees to notify the Clerk's Office in writing of changes to Plaintiff's email or mailing address.

**CONSENT TO ELECTRONIC SERVICE**

Plaintiff read, agreed to, and signed the pro se consent form to file and receive documents electronically and the consent to electronic service.

Fishkill, New York

Dated: **October 21, 2025**

Respectfully submitted,

**PATRICK FLEMING**

*Plaintiff*

406 Saratoga Lane

Fishkill, New York, 12524

(845) 475·8383 · pfReal@gmail.com