UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

PATRICK FLEMING,

Plaintiff,

   -against-                                                                 7:25:cv-08734-NSR

TOWN OF EAST FISHKILL, EAST FISHKILL POLICE
DEPARTMENT ("EFPD"), EFPD Officers in their individual
and official capacities including:  CHRISTOPHER BELLINO,
former Chief of Police, JUSTINO BERMUDEZ, Sgt., BRET A.
FINLANCIA, Officer, ALEXANDER J. HUMPHREYS, Sgt.,
MATTHEW C. MALICAN, Officer, GREGORY M. STANIS,
Lt., ALBERT J. TAURONE, Officer, BRENDAN J. WHITE,
Officer, and John/Janes Does 1-10, COUNTY OF DUTCHESS,
DUTCHESS COUNTY SHERIFF'S OFFICE ("DCSO"), DCSO
Deputies in their individual and official capacities, including:
JAMES G. FLANAGAN, Det., KIRK A. IMPERATI, Sheriff,
JONATHAN T. SNOWDON, Sgt., and John/Jane Does 11-20,
JEANINE A. DEVALL, private actor, KEVIN M. MACKAY,
private actor,

Defendants.
-------------------------------------------------------------------------x

**DEFENDANTS JAMES G. FLANAGAN, KIRK A.
IMPERATI AND JONATHAN T. SNOWDON'S
MEMORANDUM OF LAW IN SUPPORT OF
DISMISSAL**

SOKOLOFF STERN LLP
Kimberly Hunt Lee
*Attorneys for Respondent*
80 Washington Street, Suite 100
Poughkeepsie, NY  12601
(845) 262-6333

**TABLE OF CONTENTS**

**Page(s)**

Preliminary Statement……………………………………………………………………..1

Statements of Facts………………………………………………………………………...1

    A.  The FAC…………………………………………………………………………..1

    B.  The Claims Against the County Defendants……………………………………3

Standard of Review…………………………………………………………………………3

    A.  Rule 12(b)(1)……………………………………………………………….…4

    B.  Rule 2(b)(6)…………………………………………………………………...5

POINT I

    The Court Lacks Subject Matter Jurisdiction…………………………………………..7

POINT II

    The Claims Against the Duchess County Sheriff's Office Must
    Be Dismissed……………………………………………………………………………...7

POINT III

    The 42 U.S.C. §1983 Claims Against the County Defendants Must
    Be Dismissed……………………………………………………………………....…8

    A.  Personal Involvement…………………………………………………………9

        1.  Sheriff Imperati…………………………………………………………..10

        2.  Sgt. Snowdon…………………………………………………………11

i

**TABLE OF CONTENTS**

**Page(s)**

3.  Det. Flanagan………………………………………………………….….11

B.  There Is No Constitutional Violation………………………………………………12

POINT IV

The *Monell* Claim Fails Against the County…………………………………………13

POINT V

Plaintiff's Conspiracy Claims Fail……………………………………………………17

POINT VI

Plaintiff's Claim Under 42 U.S.C. §1986 Fails Against the County
Defendants………………………………………………………………………...…..20

POINT VII

The Court Should Decline to Exercise Supplemental Jurisdiction
Over State Law Claims……………………………………………………………….20

POINT VIII

The State Law Claims Against the County Defendants are Barred
by the Failure to File a Notice of Claim…………………………………………….21

POINT IX

Any State Claims Against the County Are Time Barred……………………...…22

**TABLE OF CONTENTS**

**Page(s)**

POINT X

    Qualified Immunity…………………………………………………………………23

Conclusion……………………………………………………………………………..24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alfaro Motors, Inc. v. Ward*,
  814 F.2d 883 (2d Cir., 1987) ................................................................................. 9

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................. 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 4, 11

*Askins v. Doe No. 1*,
  727 F.3d 248 (2d Cir., 2013) ................................................................................. 15

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir., 2005) ................................................................................. 4

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2004) ................................................................................. 11

*Baker v. McCollan*,
  443 U.S. 137 (1979) ................................................................................. 9

*Batista v. Rodriguez*,
  702 F.2d 393 (2d Cir., 1983) ................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 4, 5

*Bennett v. Care Correction Solution Medical Contractor*,
  2017 WL 1167325 (SDNY, 2017) ................................................................................. 20

*Brandon v. City of New York*,
  705 F. Supp. 2d 261 (SDNY, 2010) ................................................................................. 16

*Brown v. City of Oneonta, New York*,
  221 F.3d 329 (2d Cir., 2000) ................................................................................. 20

*Campbell v. Giuliani*,
 2000 WL 194815 (EDNY, 2000) ........................................................................................ 15

*Carbajal v. County of Nassau*,
 271 F.Supp.2d 415 (SDNY, 2003) ....................................................................................... 8

*Castilla v. City of New York*,
 2013 WL 1803896 (SDNY, 2013) ........................................................................................ 9

*City of Okla. City v. Tuttle*,
 471 U.S. 808 (1985) .......................................................................................................... 16

*City of St. Louis v. Praprotnik*,
 485 U.S. 112 (1988) .......................................................................................................... 17

*Conte v. Cnty. Of Nassau*,
 2010 WL 3924677 (EDNY, 2010) ...................................................................................... 11

*Cornejo v. Bell*,
 592 F.3d 121 (2d Cir., 2010) ............................................................................................... 9

*Cotto v. City of New York*,
 803 F. App'x. 500 (2d Cir., 2020).................................................................................... 17

*Cotto v. City of New York*,
 2017 WL 3476045 (SDNY, 2017) ...................................................................................... 22

*Cruz v. AAA Cartin and Rubbish Removal*,
 116 F.Supp.3d 232 (SDNY, 2015) ....................................................................................... 3

*Dantzig v. County of Westchester*,
 2021 WL 1030655 (SDNY, 2021) ...................................................................................... 14

*Darnell v. Pineiro*,
 849 F.3d. 17 (2d Cir., 2017) .............................................................................................. 23

*Davis v. City of New York*,
 2008 WL 2511734 (SDNY, 2008) ...................................................................................... 16

*De Gradi v. Coney Island Medical Group, P.C.*,
 568 N.Y.S.2d 412 (2d Dept., 1991)................................................................................... 21

v

*Dellutri v. Vill. of Elmsford,*
    895 F. Supp. 2d 555 (SDNY, 2012) .................................................................. 17

*DeShaney v. Winnebago County Department of Social Services,*
    489 U.S. 189 (1989) ................................................................................... 8, 12

*Dorsett-Felicelli, Inc., v. County of Clinton,*
    349 F.Supp.2d. 355 (NDNY, 2004)..................................................................... 7

*Estelle v. Gamble,*
    429 U.S. 97 (1976) ............................................................................................ 5

*Farid v. Elle,*
    593 F.3d 233 (2d Cir. 2010) ............................................................................ 11

*Fate v. Petranker,*
    2020 WL 3640007 (SDNY, 2020) .................................................................... 14

*Gallop v. Cheney,*
    642 F.3d 364 (2d Cir., 2011) ........................................................................... 19

*Gaynor v. Rockefeller,*
    15 N.Y.2d 120 (1965)...................................................................................... 13

*Gonzalez v. City of New York,*
    1996 WL 227824 (SDNY, 1996) ...................................................................... 21

*Green v. Maraio,*
    722 F.2d 1013 (2d Cir., 1983) ......................................................................... 24

*Greenland v. Municipality of Westchester Cnty.,*
    2020 WL 4505507 (SDNY, 2020) .................................................................... 21

*Griffin v. Breckenridge,*
    403 U.S. 88 (1971) .......................................................................................... 19

*Grullon v. City of New Haven,*
    720 F.3d 133 (2d Cir., 2013) ........................................................................... 10

*Haines v. Kerner,*
    404 U.S. 519 (1972) .......................................................................................... 5

*Hall v. City of White Plains,*
    185 F.Supp.2d 293 (SDNY, 2002) ....................................................................................... 7

*Hansel v. Brazell,*
    85 F. App'x 237 (2d Cir. 2004)......................................................................................... 13

*Hardy v. N.Y.C. Health & Hosps. Corp.,*
    164 F.3d 789 (2d Cir., 1999) ............................................................................................ 21

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) .......................................................................................................... 23

*Harrington v. Cnty. of Suffolk,*
    607 F.3d 31 (2d Cir., 2010) .................................................................................... 12, 13, 15

*Hawthorne by Hawthorne v. County of Putnam,*
    492 F.Supp.3d 281 (SDNY, 2020) ...................................................................................... 9

*Hoblock v. Albany Cty. Bd. of Elections,*
    422 F.3d 77 (2d Cir., 2005) ............................................................................................ 5, 6

*Hunter v. Bryant,*
    502 U.S. 224 (1991) .......................................................................................................... 24

*In re Merrill Lynch Ltd. Partnerships Litig.,*
    154 F.3d 56 (2d Cir., 1998) .............................................................................................. 21

*Jones v. Beame,*
    45 N.Y.2d 402 (1978)........................................................................................................ 13

*Kentucky v. Graham,*
    473 U.S. 159 (1985) .......................................................................................................... 10

*L.K. v. Sewanhaka Central High School Dist.,*
    641 Fed. Appx. 56 (2d Cir., 2016)..................................................................................... 20

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir., 1996) .................................................................................................. 5

*Lockett v. City of Middletown,*
    2021 WL 1092357 (SDNY, 2021) ..................................................................................... 14

*Maldonado v. Westchester County,*
2021 WL 356155 (SDNY, 2021)........................................................................... 14

*Matican v. City of New York,*
524 F.3d 151 (2d Cir., 2008) ................................................................................ 20

*McCaffrey v. City of New York,*
2013 WL 494025 (SDNY, 2013) ........................................................................... 15

*McKinnon v. Patterson,*
568 F.2d 930 (2d Cir., 1977) ................................................................................... 9

*Monell v. Department of Soc. Services,*
436 U.S. 658 (1978) .....................................................................................Passim

*Morrison v. Nat'l Austl. Bank Ltd.,*
547 F.3d 167 (2d Cir., 2008) ................................................................................... 3

*Mullenix v. Luna,*
136 S.Ct. 305 (2015).............................................................................................. 23

*Muschette on Behalf of A.M. v. Gionfriddo,*
910 F.3d 65 (2d Cir., 2018) .................................................................................. 23

*Newton v. City of New York,*
566 F. Supp. 2d 256 (SDNY, 2008) ...................................................................... 15

*Nike, Inc. v. Already, LLC,*
663 F.3d 89 (2d Cir., 2011) ................................................................................ 3, 5

*Patterson v. County of Oneida,*
375 F.3d 206 (2d Cir., 2004) ................................................................................ 13

*Pearson v. Callahan,*
555 U.S. 223 (2009) .............................................................................................. 23

*Peritz v. Nassau Cnty. Bd. of Coop. Educ. Servs.,*
2019 WL 2410816 (EDNY, 2019) ......................................................................... 21

*Plair v. City of New York,*
789 F. Supp. 2d 459 (SDNY, 2011) ....................................................................... 17

*Reich v. City of New* York,
   2021 WL 6423983 (EDNY, 2021) ........................................................................ 13

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n.*,
   896 F.2d 674 (2d Cir., 1990) ................................................................................. 3

*Robinson v. Town of Kent, N.Y.*,
   2012 WL 3024766 (SDNY, 2012) ........................................................................ 10

*Romer v. Morgenthau*,
   119 F.Supp.2d 346 (SDNY, 2000) ........................................................................ 19

*Russell v. Coughlin*,
   910 F.2d 75 (2d Cir.,1990) .................................................................................... 24

*Russell v. Westchester Cmty. Coll.*,
   2017 WL 4326545 (SDNY, 2017) ........................................................................ 21

*Schweitzer v. Brunstein*,
   2016 WL 4203482 (EDNY, 2016) ........................................................................ 15

*Smith v. U.S. Dep't of Just. and Immigr. & Naturalization Serv.*,
   218 F. Supp. 2d 357 (WDNY, 2002) ...................................................................... 5

*Spargo v. N.Y. Comm'n on Judicial Conduct*,
   351 F.3d 65 (2d Cir., 2003) .................................................................................... 7

*Star v. Burlington Police Dep't*,
   189 F.3d 462 (2d Cir.1999) ................................................................................... 12

*Stone v. Dept. of Investigation of City of New York*,
   1992 WL 25202 (SDNY, 1992) ............................................................................ 12

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir., 2020) ................................................................................. 10

*Thomas v. Roach*,
   165 F.3d 137 (2d Cir.,1999) ............................................................................ 18, 19

*Town of Castle Rock v. Gonzalez*,
   545 U.S. 748 (2005) .............................................................................................. 13

*Tracy v. Freshwater*,
   623 F.3d 90 (2d Cir., 2010) ...................................................................................... 23

*Warner v. Village of Goshen Police Department*,
   256 F.Supp.2d 171 (SDNY, 2003) ............................................................................ 22

*Warren v. Fischl*,
   33 F.Supp.2d 171 (EDNY, 1999) .............................................................................. 19

*Yousef v. County of Westchester*,
   2020 WL 2037177 (SDNY, 2020) ............................................................................ 15


Statutes

42 U.S.C. §1983 ................................................................................................... Passim
42 U.S.C. §1985(3) ...................................................................................... 3, 17, 18, 19
42 U.S.C. §1986 .................................................................................................. 2, 3, 20
N.Y. Gen. Mun. Law § 50–i ......................................................................................... 21
N.Y. General Municipal Law, §2 .................................................................................... 7
Section 1985 ................................................................................................................ 20
§50-i(1)(c) .................................................................................................................... 22

Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 4
Rule 12(b)(1) .................................................................................................................. 5

x

**PRELIMINARY STATEMENT**

Plaintiff's First Amended Complaint ("FAC") as against Dutchess County; the Dutchess County Sheriff's Office; Sheriff Kirk Imperati; Det. James Flanagan and Sgt. Jonathan Snowdon (collectively, the "County" defendants, unless otherwise individually referred to) must be dismissed because the court lacks subject matter jurisdiction, and, irrespective of jurisdiction, the FAC fails to state a claim against them. Based on the facts pled, the involved Sheriff's Deputies did nothing more than answer an inquiry posed by the plaintiff, and take a report from him, neither of which rise to the level of a Constitutional violation.

**STATEMENT OF FACTS**

**A.      The FAC.**

The court is likely very familiar with the facts as all defendants have made separate motions to dismiss.[1] This statement will be kept brief considering the multiple motions. This case is a domestic dispute between plaintiff and his former girlfriend, defendant Jeanine DeVall, with whom he resided and shares a child with. (FAC, ¶17). His claims center on his removal from her residence, which came after defendant Kevin MacKay, Esq. was retained to represent DeVall and following the issuance of a Notice to Quit and Terminate License. (FAC, ¶¶43-45). Plaintiff refused to leave the premises, and DeVall filed a report with the co-defendant East Fishkill Police Department ("EFPD") informing them of the Notice to Quit. (FAC, ¶51). EFPD were called to the residence on September 24, 2022, but failed to restore plaintiff's access to the property. (FAC, ¶¶52-54). Family Court proceedings were commenced on September 26, 2022,

---

[1] The FAC is annexed to the Affidavit of Kimberly Hunt Lee as *Exhibit "A"* and will be referred to here as FAC, ¶__.

1

with DeVall filing Family Offense Petition seeking a Temporary Order of Protection against plaintiff. (FAC, ¶¶57-59). Plaintiff went to the EFPD on October 12, 2022 to "finalize a DIR (Domestic Incident Report) and pursue criminal charges [against DeVall] regarding the unlawful eviction (RPAPL 768)." (FAC, ¶61).

The very limited involvement of the DSCO occurred between October 26-28, 2022 and is described in ¶¶72-77 of the FAC. It is alleged that on October 26, 2022 PO Humphreys (EFPD) contacted the DCSO civil division and confirmed that DeVall would not need an eviction warrant if plaintiff voluntarily vacated the premises. (FAC, ¶72). On October 27, 2022 Sgt. Snowdon "responded to an inquiry" submitted by plaintiff regarding the Sheriff's role in enforcing RPAPL §768. (FAC, ¶73). On October 27, 2022, plaintiff filed a DIR with Det. Flanagan and "urged him to conduct an independent investigation due to EFPD relying on MacKay's advice". Instead of doing an independent investigation, Det. Flanagan contacted EFPD, accepted their narrative, and closed his investigation. (FAC, ¶¶74-75). Sheriff Imperati is only "involved" to the extent that he is the "final policymaker for the County of Dutchess with respect to police training, supervision, discipline, investigative standards, and enforcement practices concerning residential occupancy disputes and alleged unlawful evictions." (FAC, ¶16).

The FAC alleges that on November 16, 2022 DeVall obtained a Temporary Order of Protection ("TOP"), which excluded him from the property and required plaintiff to remain at least 500 feet away from DeVall. (FAC, ¶¶86, 88-89, 90). Plaintiff unsuccessfully challenged the TOP, which according to MacKay's motion, remains in effect, being last renewed on November 18, 2025. (FAC, ¶91; Bernstein Decl., Ex. R). The Memorandum of Law submitted by co-

2

defendant MacKay describes in detail the ongoing proceedings in Family Court relating to the civil dispute between plaintiff and defendant DeVall.

B.      The Claims Against the County Defendants.

Plaintiff filed this federal complaint on October 21, 2025 (Dkt. 1), and the FAC on January 20, 2026, asserting nineteen federal and state claims against various defendants. As against the County defendants, plaintiff asserts Fourth and Fourteenth Amendment violations. (First Claim for Relief). The Second Claim for Relief alleges *Monell* liability. The Third Claim for Relief alleges a conspiracy pursuant to 42 U.S.C. §1985(3). The Fourth Claim for Relief alleges a claim under 42 U.S.C. §1986; the Fifth Claim for Relief alleges a civil conspiracy under state law. The Sixteenth and Seventeenth Claims for Relief, purportedly against the County, assert claims for intentional infliction of emotional distress and unlawful eviction under state law.  None of the claims asserted against the County are viable.

**STANDARD OF REVIEW**

**A. Rule 12(b)(1).**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the District Court lacks the statutory or constitutional power to adjudicate it. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir., 2011). When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court shoulder consider a Rule 12(b)(1) challenge first. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n.*, 896 F.2d 674, 678 (2d Cir., 1990).

On a motion to dismiss pursuant to Rule 12(b)(1), a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Cruz v. AAA Cartin and Rubbish Removal*, 116 F.Supp.3d 232 (SDNY, 2015) citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170

3

(2d Cir., 2008) (internal quotation marks omitted), aff'd., 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir., 2005).

Co-Defendant Kevin MacKay has also filed a motion to dismiss arguing a lack of subject matter jurisdiction and relies on documentary evidence in support of that motion. Those documents are also relied upon here, and the court should dismiss this case as it is nothing more than plaintiff's effort to circumvent lawful orders issued in state court. (See, MacKay Memorandum of Law, pp.8-11).

## B. Rule 12(b)(6).

On a Rule 12(b)(6) motion, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard is well known and often cited, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. On this motion, the court must "take all well-ple[d] factual allegations as true,

4

and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir., 1996). A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

It is also understood that a complaint submitted by a pro se plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Courts will apply a more flexible standard in determining the sufficiency of a pro se complaint. *Smith v. U.S. Dep't of Just. and Immigr. & Naturalization Serv.*, 218 F. Supp. 2d 357 (WDNY, 2002). Even under this more lenient standard the claims against the County fail.

## POINT I
## THE COURT LACKS SUBJECT MATTER JURISDICTION

The court lacks subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) when the District Court lacks the statutory or constitutional power to adjudicate it. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir., 2011).

The *Rooker-Feldman* Doctrine bars federal courts from adjudicating claims "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir., 2005). (internal citations omitted). There are 4 requirements that must be met for the doctrine to apply: (i) plaintiff must have lost in state court; (ii) the plaintiff must complain of injuries caused by a state court judgment; (iii) the plaintiff must invite federal district court review and rejection of that

5

judgment; and (iv) the state court judgment must have been rendered before the federal district court proceedings commenced. *Id*. All criteria are met here.

In the instant action, plaintiff challenges his access to what he claims is his home and property, from which he has been removed pursuant to a TOP, and which he has challenged in the underlying proceedings. Factually, plaintiff alleges his removal from the property was unlawful – though the DCSO had nothing to do with his removal – but that the County defendants did not restore his occupancy – which they cannot do in any event because of the state court issued TOP.

Plaintiff now sues in federal court for the same relief he was denied in state court, and the court has no jurisdiction to hear this. He meets each of the *Rooker-Feldman* factors: (i) plaintiff lost in state court; (ii) he complains of injuries caused by a state court judgment; (iii) he seeks federal district court review and rejection of that judgment; and (iv) the state court judgment was rendered before the federal district court proceedings commenced. *Id*. The fact that the County was not involved in the state court proceedings is irrelevant. As aptly argued by MacKay, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir., 2005). The reasons argued by MacKay apply equally to the County, and the court should dismiss this matter for a lack of subject matter jurisdiction.

Not only should the court find a lack of subject matter jurisdiction based on *Rooker-Feldman*, but should the court determine that the state court proceedings are ongoing, *Younger* abstention applies and is an alternative basis to dismiss the complaint. *Younger* abstention

6

generally prohibits courts from taking jurisdiction over federal constitutional claims that involve

or call into question ongoing state proceedings, to avoid unnecessary friction. See, *Dorsett-*

*Felicelli, Inc., v. County of Clinton*, 349 F.Supp.2d. 355 (NDNY, 2004). *Younger* "is based on

the premise that ordinarily a state proceeding provides an adequate forum for the vindication of

federal constitutional rights ....").

Under *Younger*, A federal court must refrain from hearing a federal constitutional claim

when (1) there is a pending state proceeding, (2) that implicates an important state interest, and

(3) the state proceeding affords the federal plaintiff an adequate opportunity for federal judicial

review of his federal constitutional claims. *Spargo v. N.Y. Comm'n on Judicial Conduct*, 351

F.3d 65, 75 (2d Cir., 2003). Given the significant state court litigation over the very issues

presented here, the court should abstain from deciding this matter.

Even if the court determines that this claim is ripe for review, there are no viable

constitutional claims pled against the County.

**POINT II**
**THE CLAIMS AGAINST THE DUTCHESS COUNTY**
**SHERIFF'S OFFICE MUST BE DISMISSED**

Dutchess County is a municipal government in New York State, and the Dutchess County

Sheriff's Office ("DCSO") is an administrative agency of the County, a fact plaintiff

acknowledges. (FAC, ¶14). The DCSO is not a separate legal entity which can be sued.

Departments which function as administrative branches of a municipality are not legal entities

which may be sued in their own capacity.  See, e.g., *Lee v. Orange County Jail*, 2020

WL5026554 at *1 (SDNY, 2020 citing, N.Y. General Municipal Law, §2; *Hall v. City of White*

7

*Plains*, 185 F.Supp.2d 293, 303 (SDNY, 2002); *Carbajal v. County of Nassau¸* 271 F.Supp.2d 415 (SDNY, 2003). Any claims against the DCSO should be dismissed as it is not a proper party.

**POINT III**
**THE 42 U.S.C. §1983 CLAIMS AGAINST**
**THE COUNTY DEFENDANTS MUST BE DISMISSED**

The First Claim for Relief pursuant to 42 U.S.C. §1983 must be dismissed because plaintiff fails to adequately plead the personal involvement of Sheriff Kirk Imperati, Sgt. Snowdon or Det. Flanagan in any constitutional violation. Neither is any constitutional violation alleged because the claims against the DSCO Deputies are that they failed to interfere with a domestic dispute over property, or to investigate plaintiff's claim of a right to the property. Sheriff Imperati is only involved because he has "final policymaking authority" and failed to supervise or train his officers. Sgt. Snowdon is only alleged to have "responded" to plaintiff's inquiry regarding the Sheriff's role in enforcing RPAPL § 768, a state statute governing wrongful evictions, though plaintiff does not allege that he sought help from Sgt. Snowdon, just guidance on DSCO policy. (FAC, ¶73). As for Det. Flanagan, he purportedly took a report from the plaintiff, but plaintiff claims Det. Flanagan had no follow-through on it because he reached out to the EFPD and a report had previously been filed there. (FAC, ¶¶74-75). There are no allegations the DSCO officers were involved in plaintiffs' "eviction" from the property, and the fact they didn't investigate or take steps to protect plaintiff against DeVall is not actionable. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 190 (1989).

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the

8

Constitution and laws, shall be liable to the party injured." 42 U.S.C. §1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Hawthorne by Hawthorne v. County of Putnam,* 492 F.Supp.3d 281 (SDNY, 2020) citing, *Baker v. McCollan*, 443 U.S. 137, 144 (1979). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, *2 (SDNY, 2013); see *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir., 2010). There are no allegations of improper conduct by any Deputy Sheriff to satisfy the pleading standards.

A.      **Personal Involvement.**

For liability to exist under §1983, a defendant must be personally involved in the underlying conduct or events in that he "subjects, or causes [plaintiff] to be subjected" to an alleged constitutional violation. 42 U.S.C. §1983; *Monell v. Department of Soc. Services*, 436 U.S. 658, 692 (1978). Thus, not only must a violation be sufficiently alleged, but also defendants' personal connection to the violation.

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir., 1977).  Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir., 1987) (internal quotation marks omitted). "It is well settled that ... to establish a defendant's individual liability in a suit brought under §1983, a plaintiff

9

must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir., 2013). This complaint does not even come close to satisfying this pleading standard and does not adequately allege that Sheriff Imperati, Det. Flanagan or Sgt. Snowdon's actions violated the Constitution and plaintiffs' rights. See, *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir., 2020).

### 1. Sheriff Imperati.

As argued above, there are no allegations as to the Sheriff's involvement, other than the fact that he is the final policymaker for the DSCO. (FAC, ¶16). The FAC's 42 U.S.C. § 1983 official capacity claim against Sheriff Imperati is redundant of the municipal liability claims asserted against Dutchess County. Arguably, Plaintiff sues Sheriff Imperati only in his official capacity, as there are no allegations otherwise. An official-capacity claim against a municipal officer is a claim against the municipality itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

Plaintiff's claim against Sheriff Imperati in his official capacity replicate the municipal liability claims against Dutchess County. *Graham*, 473 U.S. at 165 ("[o]fficial capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

"Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Robinson v. Town of Kent, N.Y.*, 2012 WL 3024766 (SDNY, 2012). The Court should do the same here.

### 2.      Sgt. Snowdon.

There is ostensibly one allegation about Sgt. Snowdon, ¶73, that he responded to an inquiry plaintiff submitted regarding DSCO's role in enforcing RPAPL §768. There are no allegations that Sgt. Snowdon did anything other than respond to this inquiry. This does not show the personal involvement of Sgt. Snowdon in any alleged constitutional violation. *See, e.g.*, *Iqbal*, 556 U.S. at 662; *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004); *Farid v. Elle*, 593 F.3d 233, 249 (2d Cir. 2010); *Conte v. Cnty. Of Nassau*, 2010 WL 3924677, *11 (EDNY, 2010). "[M]ere bald assertions and conclusions of law do not suffice." *Conte*, 2010 WL 3924677, at *11. A plaintiff must plead that each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### 3.      Det. Flanagan.

As with Sgt. Snowdon, the FAC does not plausibly suggest his personal involvement in any constitutional deprivation. There are two paragraphs dedicated to Det. Flanagan, alleging that he took a Domestic Incident Report from the plaintiff; he contacted the EFPD, "accepted their narrative" and closed his investigation, which perpetuated plaintiff's ongoing exclusion from the residence. (FAC, ¶¶74-75). At best, this is tantamount to a failure to investigate, which is not actionable. As argued above, this does not show the personal involvement of Det. Flanagan in any alleged constitutional violation and the FAC should be dismissed. *See, e.g.*, *Iqbal*, 556 U.S. at 662; *Back v. Hastings on Hudson Union Free Sch. Dist.*, *supra.*; *Farid v. Elle*, *supra.*; *Conte v. Cnty. Of Nassau*, *supra.*

**B.      There is no Constitutional Violation.**

Plaintiff does not allege that the County Defendants removed the Plaintiff from the residence owned by DeVall or otherwise barred Plaintiff's access to the residence. Plaintiff's FAC alleges these actions were undertaken by DeVall, with the assistance of her counsel MacKay (See, FAC, ¶¶ 45, 47, 89 to 90, 92 to 107). The County's only involvement was 1) responding to an inquiry made by the plaintiff and 2) taking a Domestic Incident Report from him. The gravamen of his complaint against the County is that it did not take steps to either prevent DeVall's actions or enforce the Plaintiff's asserted rights against DeVall to continue his occupancy at the DeVall residence (See, FAC, ¶¶ 54, 56, 62-63, 97). But the alleged failure to prevent the supposedly unlawful or wrongful actions of DeVall in relation to the Plaintiff, or to assist the Plaintiff in enforcing his claimed rights in relation to DeVall do not state a constitutional violation.

"Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).  The County Defendants did not violate the Plaintiff's rights by failing to take measures to prevent DeVall from taking the actions he complains of here. See, *Star v. Burlington Police Dep't,* 189 F.3d 462 (2d Cir.1999). It is well established that "[t]here is ... no constitutional right to an investigation by government officials." *Stone v. Dept. of Investigation of City of New York*, 1992 WL 25202, at *2 (SDNY, 1992); accord, *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35–36 (2d Cir., 2010). This is because "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion," and individuals accordingly have no

12

" 'legitimate claim of entitlement' to a police investigation." *Harrington*, 607 F.3d at 35 (citing, *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 760 (2005)).

The underlying claim – a violation of RPAPL §768 – by DeVall, is rooted in state law, not federal and violations of state law are not actionable under Section 1983. *Reich v. City of New* York, 2021 WL 6423983 (EDNY, 2021); *Hansel v. Brazell*, 85 F. App'x 237, 238 (2d Cir. 2004) ("Section 1983 cannot be used as a redress for violations of state law.").

A victim has no constitutionally protected right to have the police enforce the law when enforcement is discretionary. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). The manner which the DSCO exercises its enforcement authority involves "questions of judgment, discretion, and the allocation of resources and priorities which are inappropriate for resolution in the judicial arena." *Jones v. Beame*, 45 N.Y.2d 402, 407 (1978). "It is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear violation of some constitutional mandate." *Gaynor v. Rockefeller*, 15 N.Y.2d 120, 131 (1965).

For all these reasons, plaintiff has failed to allege any actionable 42 U.S.C. §1983 claim against the County Defendants.

## POINT IV
## THE *MONELL* CLAIM FAILS AGAINST THE COUNTY

A municipality may be sued under 42 U.S.C. §1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). A *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County*

13

*of Oneida*, 375 F.3d 206, 226 (2d Cir., 2004). A *Monell* claim is not a stand-alone claim but rather allows individuals to sue a municipality for constitutional violations. It is well settled that a municipality cannot be sued under 42 U.S.C. §1983 for an injury inflicted solely by its employees or agents. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1979). Rather, such an entity may only be held liable where a plaintiff's constitutional rights were violated because of a municipal policy or custom. *Id.*; see also, *Maldonado v. Westchester County*, 2021 WL 356155 (SDNY, 2021); *Lockett v. City of Middletown*, 2021 WL 1092357 (SDNY, 2021). Plaintiff must plead allegations that the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Proof of the existence of a municipal policy or custom is required for liability to be imposed because a plaintiff must demonstrate that the municipality took some action beyond merely employing allegedly misbehaving officers. See, *Fate v. Petranker*, 2020 WL 3640007 (SDNY, 2020).

Plaintiff's Second Claim for Relief under 42 U.S.C. §1983 – *Monell* Liability fails. Merely asserting, in the absence of factual allegations in support, that a municipal entity has a custom or policy that denies a plaintiff a constitutional right is insufficient to establish a plausible claim. See, *Dantzig v. County of Westchester*, 2021 WL 1030655 (SDNY, 2021), citing, *Batista v. Rodriguez*, 702 F.2d 393, 397, 399 (2d Cir., 1983). Here, plaintiff generally alleges a failure to train and supervise officers regarding unlawful evictions. (FAC, ¶119). He claims that Sheriff Imperati *inter alia* "knew or should have known" that DCSO officers were enforcing or acquiescing in self-help residential lockouts; relying on legally defective Notices to Quit, and failed to intervene, discipline or correct those practices. (FAC, ¶¶23-26). But these allegations do not establish a constitutional violation by any DSCO officer. The fact the DSCO

14

"responded" to his inquiry does not implicate any constitutional right. (FAC, ¶73). Neither does the fact that plaintiff filed a domestic incident report but doesn't like how Det. Flanagan investigated it. (FAC, ¶¶74-75). There is no claim that the DSCO removed him from the property, just that it did not restore his alleged tenancy, which the FAC does not even establish was lawful from the outset, and the fact the DSCO did not restore his tenancy or help him is not actionable. "[T]here is no constitutional right to an adequate investigation." *Newton v. City of New York*, 566 F. Supp. 2d 256, 278 (SDNY, 2008) (citing, *Campbell v. Giuliani*, 2000 WL 194815, at *3 n. 6 (EDNY, 2000)); see, *Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010). Thus, "[a] police officer's failure to pursue a particular investigative path is not a constitutional violation." *Schweitzer v. Brunstein*, 2016 WL 4203482, at *2 (EDNY, 2016) (collecting cases). Accordingly, "a 'failure to investigate' is not independently cognizable as a stand-alone claim" under Section 1983. *McCaffrey v. City of New York*, 2013 WL 494025, at *5 (SDNY, 2013). This is all his claim against the County is, and it is not actionable.

There simply has not been any violation of plaintiff's Constitutional rights. And there can be no *Monell* liability where the underlying constitutional claims do not survive. See, *Yousef v. County of Westchester*, 2020 WL 2037177, at *10 (SDNY, 2020); see also *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir., 2013) ("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors."). Here, plaintiff has failed to state a claim for any constitutional violation and because no underlying constitutional claims can survive on the merits, Plaintiff's *Monell* claim fails.

To the extent plaintiff alleges some "policy or custom" resulted in a constitutional violation, in spite of the arguments above, this claim similarly fails. A plaintiff may satisfy the

"policy or custom" requirement by alleging one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (SDNY, 2010). Plaintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury, facts not pled here.

"Conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations. *Davis v. City of New York*, 2008 WL 2511734 (SDNY, 2008). There are only conclusory allegations here with no facts to back them up.

Despite claiming a policy and practice, plaintiff only cites to his experience. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Isolated incidents, in which no municipal policymakers are involved, will not suffice to establish a municipal policy or custom. *Monell*, 436 U.S. at 694; *Tuttle*, 471 U.S. at 823-24. It is "well established that a single incident does not give rise to an unlawful practice by subordinate officials 'so permanent and well-settled as to constitute 'custom

16

or usage.'" *Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (SDNY, 2011) (quoting, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Nor can "a custom or policy be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 565 (SDNY, 2012); see also *Cotto v. City of New York*, 803 F. App'x. 500, 504 (2d Cir., 2020) (holding plaintiff's "allegations do not support a *Monell* claim because they focus on the individual officers and isolated events leading to [his] stop, detention, and prosecution without plausibly alleging a custom or policy pursuant to which those violations occurred").

While the FAC refers to Sheriff Imperati as a final policymaker, he does not allege that Sheriff Imperati had any involvement here or cite to any actual policy, and relies only on his own experience – which in and of itself is nothing more than a claim the DSCO failed to investigate his claim that he was either wrongfully evicted or that it should not have deferred to the East Fishkill Police Department, where plaintiff first sought relief, all while knowing that there were ongoing proceedings in Family Court. The allegations in this FAC are nothing more than conclusory and speculative recitations of *Monell* buzzwords with no facts to support them.

For all these reasons, the FAC does not state a *Monell* claim against the County.

## POINT V
## PLAINTIFFS CONSPIRACY CLAIMS FAIL

Plaintiff's Third Claim for Relief is stated pursuant to 42 U.S.C. §1985(3), and his Fifth Claim for Relief alleges a conspiracy under state law. Both claims fail. The FAC alleges that the "Defendants reached an agreement, combination or understanding to deprive Plaintiff of the equal protection of the law and equal privileges and immunities secured by law by maintaining

17

his exclusion from his home through self-help and threats of arrest, and by using judicial process primarily to achieve collateral objectives..." (FAC, ¶121). In the Fifth Claim for Relief, he complains that the "Defendants agreed and acted in concert to commit unlawful acts…including unlawful eviction, conversion, defamation, fraud, abuse of process, and intentional infliction of emotional distress." (FAC, ¶128). The FAC does not plead any specifics as to which DCSO officer was involved in any "conspiracy" or how, or what agreement was reached to deprive him of any right. Neither does the FAC ever suggest the any DSCO officer was involved in any eviction, conversion, defamation, fraud or other tort – just that they gave a response to his inquiry, took a complaint from him and then did not respond or investigate in the way he wanted. (FAC, ¶¶72-75). But the FAC stops short of claiming the DSCO had any involvement with co-defendant DeVall, who owned the home, or her attorney, co-defendant Kevin MacKay. And the allegation that there may have been a conversation with the co-defendant East Fishkill Police, where the DCSO "accepted their narrative" is meaningless to this conspiracy claim. (FAC, ¶75). Neither does the FAC allege that the DSCO "threatened" him, arrested him or was in any way involved in the underlying proceedings.

To state a valid cause of action under §1985(3), Plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.,1999).

To withstand a motion to dismiss a §1985(3) conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an

18

agreement, express or tacit, to achieve the unlawful end," augmented by "some details of time and place and the alleged effects of the conspiracy." *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (SDNY, 2000) (quoting, *Warren v. Fischl*, 33 F.Supp.2d 171, 177 (EDNY, 1999)) (internal quotation marks omitted). The pleadings must present facts tending to show agreement and concerted action, none of which are present here.

In addition, the plaintiff "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas*, 165 F.3d at 147. Lastly, the Complaint must adequately allege a violation of the right or rights that defendants are alleged to have conspired to violate. *Romer*, 119 F.Supp.2d at 363 ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right."). If a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights – which is the case here.

To plead a cognizable civil rights conspiracy claim under § 1985(3), a plaintiff is also required to allege that he was a member of a protected class, and that the conspirators acted with a class-based, "invidiously discriminatory motivation." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "It is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir., 2011).

The FAC falls far short of these pleading requirements, and any conspiracy claims should be dismissed. As to the County defendants, there is no underlying constitutional violation and he has not alleged how the County "conspired" with DeVall, MacKay or the EFPD defendants, and

19

there is no claim that he is a member of any protected class or that there was any discriminatory intent or motive.

**POINT VI**
**PLAINTIFFS CLAIM UNDER 42 U.S.C. §1986 FAILS**
**AGAINST THE COUNTY DEFENDANTS**

The Fourth Claim for Relief alleges that the individual DCSO Deputies knew of the conspiracy, had the power to prevent it and did not, and he suffered damages as a result. (FAC ¶¶125-126). A §1986 claim must be predicated on a valid Section 1985 claim and, in the absence of such a predicate claim, must be dismissed. *Brown v. City of Oneonta, New York*, 221 F.3d 329 at 341 (2d Cir., 2000); *L.K. v. Sewanhaka Central High School Dist.*, 641 Fed. Appx. 56, 59 (2d Cir., 2016). For the reasons already argued above, plaintiff does not have a valid §1985 claim and his §1986 claim should likewise be dismissed.

**POINT VII**
**THE COURT SHOULD DECLINE TO EXERCISE**
**SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**

As against the County defendants, the FAC purports to assert four causes against under state law. The Fifth, Sixteenth and Seventeenth Causes of Action are explicitly stated against the County Defendants, and all fail for the reasons argued above and herein. To the extent that the Twelfth Cause of Action is construed to assert any claim against the County, this claim also fails.

If it is determined that any State law claims survive, the Court should decline to exercise supplemental jurisdiction. *Matican v. City of New York*, 524 F.3d 151, 154-55 (2d Cir., 2008) ("[I]f [the plaintiff] has no valid claim under §1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims"); *Bennett v. Care Correction Solution Medical Contractor*, 2017 WL 1167325 (SDNY,

2017) ("As a general rule, the Second Circuit and the Supreme Court 'have held that when the federal claims are dismissed the state claims should be dismissed as well'") (quoting, *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir., 1998)).

**POINT VIII**
**THE STATE LAW CLAIMS AGAINST THE COUNTY DEFENDANTS**
**ARE BARRED BY THE FAILURE TO FILE A NOTICE OF CLAIM**

Under New York law, the filing of a notice of claim is a condition precedent to bringing a claim against a municipality. The notice of claim must be filed within 90 days after the claim accrues. See, e.g., *Greenland v. Municipality of Westchester Cnty.*, 2020 WL 4505507, at *6 (SDNY, 2020) (quoting, *Russell v. Westchester Cmty. Coll.*, 2017 WL 4326545, at *5 (SDNY, 2017)). "[I]n a federal court, state notice-of-claim statutes apply to state-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir., 1999). "Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice [-] of [-]claim requirement, or to grant permission to file a late notice." *Greenland*, *supra.* 2020 WL 4505507, at *6. The provisions of N.Y. Gen. Mun. Law § 50–i apply not only to claims against municipalities, but also to suits against "officer[s], agent[s] or employee[s]" whose conduct caused the alleged injury. *Gonzalez v. City of New York*, 1996 WL 227824, *2 (SDNY, 1996), *De Gradi v. Coney Island Medical Group, P.C.*, 568 N.Y.S.2d 412, 413 (2d Dept., 1991).

The plaintiff must demonstrate compliance with the notice of claim provisions. *Peritz v. Nassau Cnty. Bd. of Coop. Educ. Servs.*, 2019 WL 2410816, at *4 (EDNY, 2019). Since he did not plead compliance, and did not file any notice of claim, any state law claims are barred. (FAC).

21

Plaintiff alleges that Sgt. Snowdon responded to his inquiry regarding DCSO's role in enforcing RPAPL §768 on October 27, 2022. (FAC, ¶73). That same day, plaintiff filed a domestic incident report ("DIR") with DSCO Det. Flanagan and "urged him to conduct an independent investigation. (FAC, ¶74). He alleges that Det. Flanagan did not investigate the DIR, but rather contacted the co-defendant East Fishkill Police Department, accepted their narrative, and closed his investigation. (FAC, ¶75). Plaintiff would have had to file a notice of claim within 90 days, or by January 25, 2023. Since he did not, his state law claims are barred.

## POINT IX
### ANY STATE LAW CLAIMS AGAINST THE COUNTY ARE TIME BARRED

Not only are the claims barred by the failure to file a notice of claim, the statute of limitations within which to commence suit has also expired. The claims against the County accrued on October 27, 2022, the date referenced in the FAC as to when there was any contact with the County. Pursuant to General Municipal Law §50-i(1)(c), any action must be commenced within one year and ninety days after the happening of the event on which the claim is based. This action was not commenced until October 21, 2025, almost three years after plaintiff had any interaction with the DCSO and well after the statute of limitations expired. (Dkt. 1). All the state law claims should be dismissed. See, *Cotto v. City of New York*, 2017 WL 3476045 (SDNY, 2017); *Warner v. Village of Goshen Police Department*, 256 F.Supp.2d 171 (SDNY, 2003).

22

## POINT X
## QUALIFIED IMMUNITY

The individually named officers are entitled to qualified immunity. See, *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir., 2010). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); see also *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When considering qualified immunity, "[t]he dispositive question is whether the violative nature of particular conduct is clearly established [and] [t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (internal citations and quotations omitted). For a right to be clearly established, it must be "sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir., 2018).

Sheriff Imperati, Det. Flanagan and Sgt. Snowdon did not violate any clearly established statutory or constitutional right by failing to investigate plaintiff's claim – which is basically all the FAC alleges - and there could be no stronger case for the application of qualified immunity at the motion to dismiss stage than this one. See also, *Darnell v. Pineiro*, 849 F.3d. 17 (2d Cir., 2017).

23

It is well-established that issues involving the defense of qualified immunity should ordinarily be decided "at the earliest possible stage in litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987); *Hunter v. Bryant*, 502 U.S. 224, 226–27 (1991). A finding of qualified immunity would be proper if the basis for finding qualified immunity is apparent from the face of the complaint. *Green v. Maraio*, 722 F.2d 1013, 1019 (2d Cir., 1983). Such is the case here. "State officials performing discretionary functions are shielded from liability for civil damages in §1983 actions insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known. Even when such rights are clearly established, qualified immunity also protects a government official if it is objectively reasonable for [the official] to believe that his acts did not violate those rights." *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.,1990) (citations and internal quotations omitted).

The FAC is bereft of any factual support for the claim against Sheriff Imperati and should be dismissed for those reasons. As to Sgt. Snowdon, he is only alleged to have responded to plaintiff's *inquiry* regarding evictions, which does not violate clearly established law, or suffice to allege a Constitutional claim, and Det. Snowdon is only alleged to have failed to investigate plaintiff's allegations that he admittedly had already filed with a different police agency. (FAC, ¶¶73-75). The County defendants acted within their discretion, and qualified immunity is appropriate.

## CONCLUSION

For the foregoing reasons, the County defendants' motion to dismiss should be granted,

24

and all claims against them must be dismissed.

Dated:  Poughkeepsie, New York
        April 2, 2026

_Kimberly Hunt Lee_
Kimberly Hunt Lee

25

## CERTIFICATION

I certify that this document complies with Joint Local Rules, SDNY and EDNY §7.1(c), as it contains less than 8,750 words, exclusive of the caption and signature block. Specifically, this document contains 7,075 words, as established using the word count feature available on the word processing software used to prepare it.


_Kimberly Hunt Lee_
Kimberly Hunt Lee

26