UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PATRICK FLEMING,

                    Plaintiff,

      -against-

TOWN OF EAST FISHKILL, et al.,

                  Defendants.
_____

Civil Case No.: 7:25-cv-08734

**DEFENDANT KEVIN M. MACKAY'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

                Jonathan M. Bernstein, Esq. (512457)
                *Attorneys for Defendant*
                *Kevin M. MacKay*
                8 Southwoods Boulevard, Suite 300
                Albany, New York 12211
                Tel:  (518) 463-5400

56243003.v1

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

    A.   The Allegations and Relevant History ........................................................................ 1

    B.   The Claims Asserted ................................................................................................... 3

    C.   Family Court Proceedings........................................................................................... 4

STANDARD OF REVIEW ....................................................................................................... 7

       DISMISSAL OF THIS ACTION AGAINST KEVIN MACKAY, ESQ., IS WARRANTED ................................................................................................................................. 8

    A.   The Case Should Be Dismissed As Against MacKay Pursuant to the Rooker-Feldman Doctrine.................................................................................................................... 8

    B.   The Complaint Fails to State a Claim for Relief As to MacKay ................................... 11

        1.   First and Second Claims ....................................................................................... 11

        2.   Third, Fourth and Fifth Claims .............................................................................. 12

        3.   Sixth Claim ........................................................................................................... 14

        4.   Seventh Claim ....................................................................................................... 15

        5.   Tenth Claim and Eleventh Claim........................................................................... 17

        6.   Twelfth Claim ....................................................................................................... 19

        7.   Fourteenth Claim .................................................................................................. 20

        8.   Sixteenth Claim..................................................................................................... 21

        9.   Seventeenth Claim ................................................................................................ 22

        10.   Nineteenth Claim .................................................................................................. 23

        11.   Punitive Damages ................................................................................................. 25

CONCLUSION........................................................................................................................ 25

56243003.v1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. Lim*,
   75 AD3d 472, 905 N.Y.S.2d 585 [1st Dept 2010] ...................................................................13

*Abadi v. NYU Langone Health Sys.*,
   705 F. Supp. 3d 172 [SDNY 2023] ........................................................................................14

*Acquah v. City of Syracuse*,
   2020 U.S. Dist. LEXIS 54667 [N.D.N.Y. Mar. 30, 2020] ......................................................12

*ANS 1 Corp. v. Yosef*,
   2025 N.Y. App. Div. LEXIS 6826 [2d Dep't 2025] ................................................................15

*Ashcroft v. Iqbal*,
   566 U.S. 662 [2009] .................................................................................................................7

*Baron v. Galasso*,
   83 A.D.3d 626 (2d Dep't 2011) ..............................................................................................20

*Bill Birds, Inc. v Stein Law Firm, P.C.*,
   164 A.D.3d 635, 637, 82 N.Y.S.3d 91 [2d Dep't 2018], 35 NY3d 173, 126 N.Y.S.3d 50, 149
   N.E.3d 888 [2020] ...................................................................................................................24

*Bright View Trading Co. v. Park*,
   2004 U.S. Dist. LEXIS 18572 (S.D.N.Y. Sept. 15, 2004) ......................................................17

*Brown v. Lockwood*,
   76 A.D.2d 721 (2d Dep't 1980) ..............................................................................................17

*Butler*,
   210 AD2d ................................................................................................................................18

*Cohen v. Restuccia*,
   2021 N.Y. Misc. LEXIS 1739 (Sup. Ct., N.Y. Cnty. Apr. 8, 2021) .........................................23

*Colavito v New York Organ Donor Network, Inc.*,
   8 NY3d 43, 860 NE2d 713, 827 NYS2d 96 [2006] ................................................................19

*Conseillant v. Lafontant*,
   2009 U.S. Dist. LEXIS 61795 (N.D.N.Y. 2009) ......................................................................7

*Dwares v. City of New York*,
   985 F.2d 94 [2d Cir. 1993] ......................................................................................................13

*Eskridge v. Diocese of Brooklyn*,
   210 A.D.3d 1056 (2d Dep't 2022) ...........................................................................................21

56243003.v1

*Eurycleia Partners, L.P. v. Seward & Kissel, LLP,*
  12 N.Y.3d 553 (2009) ......................................................................................................16

*Fronczak v. Town of Orchard Park,*
  65 Misc.3d 246 (Sup. Ct., Erie Cnty. Jul. 16, 2019) .......................................................22

*Gagliardi v. Village of Pawling,*
  18 F.3d 188 at (2d Cir. 1994) ..........................................................................................12

*Garcia v Banco BCT S.A.,*
  2018 N.Y. Misc. LEXIS 5652 (Sup. Ct., N.Y. Cnty. Nov. 28, 2018) ........................................14

*Geris v. DiSilva Taunton Express, Inc.,*
  2021 U.S. Dist. LEXIS 104286 [W.D.N.Y. 2013] .......................................................25

*Glover v. Onondaga Cnty. Sheriff's Dep't,*
  2024 U.S. Dist. LEXIS 30083 (N.D.N.Y. Feb. 22, 2024) ........................................18

*Greenberg v Spitzer,*
  155 A.D.3d 27, 62 N.Y.S.3d 372 (2d Dep't 2017) .......................................................14

*Griffin v. Breckenridge,*
  403 U.S. 88, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971) ...............................................12

*Guliyev v Banilov & Assoc., P.C.,*
  221 AD3d 589, 198 N.Y.S.3d 400 .................................................................................24

*Hoblock v. Albany Cnty. Bd. of Elections,*
  422 F.3d 77 (2d Cir. 2005) ..............................................................................................10

*Jews for Jesus, Inc. v. Jewish Community Relations,*
  968 F.2d 286 (2d Cir. 1992) ............................................................................................12

*Karlen ex rel. J.K. v. Westport Bd. of Educ.,*
  638 F. Supp. 2d 293 (D. Conn. 2009) ...............................................................................8

*Katz v. Katz,*
  2006 N.Y. Misc. LEXIS 9556 (Sup. Ct., N.Y. Cnty. Jan. 27, 2006) ........................................17

*Kaufman v. Cohen,*
  307 A.D.2d 113 (1st Dep't 2003) ....................................................................................20

*Kaye v Trump,*
  58 A.D.3d 579 [1st Dep't 2009] ......................................................................................22

*Klein v. Metropolitan Child Servs., Inc.,*
  100 A.D.3d 708 (2d Dep't 2012) .....................................................................................21

*Lama Holding Co. v. Smith Barney,*
  88 N.Y.2d 413 (1996) ......................................................................................................16

iii

*Lemieux v Fox*,
 135 AD3d 713, 22 N.Y.S.3d 581 (2d Dep't 2016) ................................................15

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000) ....................................................................................7, 8

*Maroulis v Sari M. Friedman, P.C.*,
 153 A.D.3d 1250, 60 N.Y.S.3d 468  [2d Dep't 2017] ............................................24

*Maroulis v Sari M. Friedman, P.C.*,
 153 AD3d at 1252, ................................................................................................24

*Mosesson v Jacob D. Fuchsberg Law Firm*,
 257 A.D.2d 381, 683 N.Y.S.2d 88 (1st Dep't 1999), 93 NY2d 808, 713 N.E.2d 417, 691
N.Y.S.2d 382 [1999] ................................................................................................15

*Murphy v. American Home Prods. Corp.*,
 58 N.Y.2d 293 (1983) ............................................................................................21

*Murphy v. Neuberger*,
 1996 U.S. Dist. LEXIS 11164, 1996 WL 442797 ....................................................13

*Nat. Res. Def. Council v. Johnson*,
 461 F.3d 164 (2d Cir. 2006) ....................................................................................8

*Nichols v Curtis*,
 2010 N.Y. Misc. LEXIS 6867 (Sup. Ct., N.Y. Cnty. Jul. 14, 2010) ........................15

*Palermo v Taccone*,
 79 A.D.3d 1616 [4th Dep't 2010] ............................................................................19

*Pinkesz Mut. Holdings, LLC v Pinkesz*,
 198 A.D.3d 693, 156 N.Y.S.3d 216  [2d Dep't 2021] ............................................24

*Ratto v. Oliva*,
 195 A.D.3d 870 (2d Dep't 2021) ............................................................................21

*Redd v. Brooklyn Friends Sch.*,
 238 A.D.3d 1181 (2d Dep't 2025) ..........................................................................21

*Rizk v. City of New York*,
 462 F. Supp. 3d 203 (E.D.N.Y. 2020) ....................................................................14

*Romano v Romano*,
 2 AD3d 430, 767 N.Y.S.2d 841 [2d Dept 2003] ....................................................13

*Ruotolo v. City of New York*,
 514 F.3d 184 (2d Cir. 2008) ....................................................................................7

*Sammy v Haupel*,
 170 A.D.3d 1224, 97 N.Y.S.3d 269  [2d Dep't  2019] ............................................25

iv

*Spiegel v. Goodman*,
  204 A.D.2d 430 (2d Dep't 1994) ...........................................................................23

*Sweet v. Sheahan*,
  235 F.3d 80 (2d Cir. 2000) ......................................................................................8

*Tantaro v. Common Ground Community Hous. Dev. Fund, Inc.*,
  2015 N.Y. Misc. LEXIS 824 (Sup. Ct., N.Y. Cnty. Mar. 17, 2015) ..........................23

*Tueme v Lezama*,
  217 A.D.3d 715 [2d Dep't 2023] ...........................................................................22

*Wagner v. Hyra*,
  518 F. Supp. 3d 613 (N.D.N.Y. 2021) .....................................................................18

Wagner, supra ...............................................................................................................19

*Whelan v Cuomo*,
  220 AD3d 979, 198 N.Y.S.3d 739 (2d Dep't 2023) ................................................14

*Youmans v Smith*,
  153 N.Y. 214, 47 N.E. 265 [1897] .........................................................................15

**Statutes**

§ 1983 ..................................................................................................................11, 12, 19

42 USC Section 1985 ......................................................................3, 11, 12, 13, 14

CPLR 215 ....................................................................................................................14, 22

CPLR 3016 ............................................................................................................14, 15, 16

Judiciary Law Section 487 .............................................................................................4, 6, 24

RPAPL § 768 ....................................................................................................................23

RPAPL § 853 ....................................................................................................................23

RPAPL §§ 711, 768, 853 ...................................................................................................22

RPAPL 711 and 768 ......................................................................................................4, 23

Section 1986 ....................................................................................................................14

**Other**

Rule 12 ....................................................................................................1, 2, 3, 8, 9, 25

Rule 8 ...............................................................................................................................7

56243003.v1

## **PRELIMINARY STATEMENT**

Defendant Kevin M. MacKay submits this memorandum of law in support of his motion to dismiss the action as against him in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, due to lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6) based on the First Amended Complaint's failure to state a claim and the application of the statute of limitations. For the reasons discussed more fully, below, dismissal is warranted as the Court lacks subject matter jurisdiction due to the Rooker-Feldman doctrine. Dismissal is also warranted as plaintiff fails to state a cause of action, and there are claims that are time-barred. In any event, the request for punitive damages should be stricken from the complaint.

## **STATEMENT OF FACTS**

### A.  The Allegations and Relevant History

According to allegations set forth in the First Amended Complaint, in or around June 2022, Co-Defendant Jeanine DeVall retained Defendant Kevin MacKay, Esq., to represent her with respect to a Family Court petition for custody, and to assist with the removal of Plaintiff Fleming from her Residence after the breakdown of the relationship between DeVall and Plaintiff. Ex. A at ¶¶ 43-44. MacKay's involvement came about after Plaintiff "declined to vacate absent a written agreement or court order." *Id*. at ¶ 43. On July 28, 2022, MacKay drafted and served a Notice to Quit and Terminate License ("NTQ") on Plaintiff to terminate his license to occupy DeVall's Residence in Hopewell Junction, New York. *Id*. at ¶ 45, NTQ. After the Plaintiff subsequently made two attempts to regain access to the Residence, requiring police intervention, MacKay advised DeVall to seek an *ex parte* Temporary Order of Protection ("TOP"). *Id*. at ¶ 51-52, 55.

On November 16, 2022, DeVall obtained an ex parte TOP after submitting, with MacKay's help, a Family Offense Petition (FOP), which included a Domestic Incident Report (DIR), a supporting deposition, and officer narratives from East Fishkill Police Department P.O. White and

1

P.O. Humphreys. *Id.* at ¶¶ 86, 88-89. Among other things, the TOP excluded Plaintiff from DeVall's property and required Plaintiff to remain at least 500 feet from DeVall. *Id.* at ¶ 90. The TOP also included a provision that barred all communications from Plaintiff to DeVall or MacKay, except for communications related to their child. *Id.* at ¶ 91.

In response to the issuance of the TOP, Plaintiff filed multiple motions challenging the TOP and requesting its dismissal, which DeVall successfully opposed with the assistance of MacKay. *Id.* at ¶ 93.  One such filing included a motion to dismiss the underlying Family Offense Petition, which was denied by the Court as the allegations in DeVall's petition alleged acts that, if proven, would establish that Fleming committed a qualifying family offense. Ex. H.

As time passed, the Court continued to uphold DeVall's Family Offense Petition, extending and/or renewing the Temporary Order of Protection approximately seven (7) times after the original petition was granted on November 16, 2022. Ex. A at ¶¶ 89, 94. This notwithstanding, after each renewal, Plaintiff would file some type of challenge.

On February 20, 2024, when DeVall's TOP was extended for the third time, Fleming, on the same day, filed an Omnibus motion requesting a variety of relief, including a request for modification or dismissal of the TOP and disqualification of MacKay as DeVall's counsel. Ex. K. The Court denied this motion in its entirety, finding that Fleming failed to provide any evidence of his entitlement to a dismissal of the TOP. *Id.* Further, the Court stated that, in any event, the proper remedy to resolving the underlying FOP is a speedy trial, which the court noted Fleming had significantly delayed with the discharge of his two court-appointed attorneys. *Id.* As to the disqualification of MacKay, the Court found that Fleming had not demonstrated an actual or perceived conflict which would permit such a "drastic remedy," despite Plaintiff's threat of making a "forthcoming motion for sanctions" against MacKay back in January 2023. Ex. A at ¶ 96.

2

56243003.v1

On September 18, 2025, in response to the April 22, 2025 extension of DeVall's TOP, Fleming again attempted to request various relief across the pending Family Court proceedings, including to compel disclosure, modify or dismiss the TOP, grant sole custody of Fleming and DeVall's child to him, and, again, disqualify MacKay as DeVall's counsel, among other things. Ex. Q. Unsurprisingly, each of Fleming's requests in Motion #11 were denied as untimely and improper. *Id.*

DeVall's current Temporary Order of Protection was last renewed on November 18, 2025. Ex. R. Ahead of this renewal, Fleming filed Motion #12 on November 14, 2025, requesting that the Court deny DeVall's Order to Show Cause and not reinstate the Temporary Order of Protection; however, Fleming's request was swiftly denied and the TOP was reinstated. Ex. T. As of January 12, 2026, the Court reaffirmed its decision to reinstate the TOP, which is eligible for renewal on May 18, 2026. *Id.*, Ex. A at ¶ 92. Currently, the various proceedings in the Dutchess County Family Court for custody, the FOP, the TOP, and the Violation Petition of the TOP between DeVall and Fleming remain pending. *Id.* at ¶107.

**B. The Claims Asserted**

Plaintiff commenced this action alleging various claims for relief. The First alleges Fourth and Fourteenth Amendment violations. The Second alleges Monell Liability. The Third alleges a conspiracy pursuant to 42 USC section 1985. The Fourth alleges a claim pursuant to 42 USC section 1986 but this claim is not directed at MacKay. The Fifth alleges civil conspiracy under New York law. The Sixth alleges defamation. The Seventh alleges fraud and constructive fraud. The Eighth is for unjust enrichment and quantum meruit that is not asserted against MacKay. The Ninth alleges violation of a joint venture agreement that is not asserted against MacKay. The Tenth alleges malicious prosecution. The Eleventh alleges abuse of process. The Twelfth alleges

3

conversion.  The Thirteenth asserts a claim for an accounting that is not against MacKay.  The Fourteenth asserts breach of fiduciary duty and aiding and abetting.  The Fifteenth asserts a claim for private nuisance that is not asserted against MacKay.  The Sixteenth asserts a claim for intentional infliction of emotional distress.  The Seventeenth asserts a claim for wrongful eviction, trespass and treble damages pursuant to RPAPL 711 and 768.  The Eighteenth asserts entitlement to imposition of a constructive trust that is not asserted as against MacKay.  The Nineteenth alleges a violation of New York Judiciary Law section 487.

### C.  Family Court Proceedings

As this is a motion for lack of subject matter jurisdiction, defendant is allowed to supply facts and evidence outside of the pleadings.  Attached to this motion are the various Family Court submissions and Family Court orders from Family Court of the State of New York, County of Dutchess, Family No. 68180.  Below is a synopsis of those orders.

On July 28, 2022, DeVall sent a Notice to Quit and Terminate Lease to plaintiff.  On September 14, 2022, DeVall filed a petition requesting an order awarding temporary sole custody of the child (Docket #V-03505-22).  On September 26, 2022, plaintiff filed a petition for Order of Protection that was dismissed because the allegations did not constitute a family offense (Docket #O-03481-22) Ex. B.  On November 10, 2022, a Temporary Order of Custody was awarded to DeVall (V-3505-22) Ex. C.  On November 16, 2022, a Family Offense Petition was filed by DeVall.  On November 16, 2022, a Temporary Order of Protection was awarded to DeVall (Docket #O-04118-22) Ex. D. On January 17, 2023, plaintiff filed a counter-proposed order of support against DeVall. Ex. E. On March 31, 2023, an Amended and Extended Temporary Order of Protection was issued (O-04118-22) Ex. F.

On June 30, 2023, DeVall filed a Violation of the TOP Petition against plaintiff for allegedly communicating in a manner prohibited by the Order. Ex. G. On August 4, 2023, a Decision and Order was issued denying the motion to dismiss the Family Offense Petition (O-04118-22) Ex. H.  On August 15, 2023, an Amended and Extended Temporary Order of Protection was issued (O-04118-22) Ex. I.

On November 9, 2023, the First Amended Custody Order was issued (V-03505-22).  On February 20, 2024, an Extended Temporary Order of Protection was issued (O-04118-22) Ex. J. On February 20, 2024, plaintiff filed an Omnibus motion requesting: interim counsel fees, a Crawford hearing, modification or dismissal of temporary order of dismissal, transcripts pursuant to 722-c, and disqualification of counsel.  On April 8, 2024, by Decision and Order from plaintiff's Omnibus motion, the court denied in its entirety the relief requested (specifically denying relief for interim counsel fees, a Crawford hearing, transcript, and disqualification of opposing counsel), and deferred the modification or dismissal of TOP to the trial court.  The Court also assigned a new attorney, the fourth to be assigned to Fleming (V-03763-22, V-03505-22, 0-04118-22) Ex. K.

On August 5, 2024, an Extended Temporary Order of Protection was issued (O-04118-22) Ex. L. On August 5, 2024 a 2nd Amended Temporary Order of Custody and Visitation was issued (Docket V-03505-22).  On August 13, 2024, a Disclosure Order was issued prior to trial (V-03505-22, V-03763-22, O-04118-22, O-4118-22/23A) Ex. M. On August 23, 2024, plaintiff appealed 10 orders of Family Court, and the Appellate Division, Second Department ordered that the appeals be dismissed and declined to grant leave to appeal. Ex. V.

On March 21, 2025, a Decision and Order based on plaintiff's motion for mistrial was issued that denied the motion based on failure to serve notice of motion and moving papers upon counsel for respondent or attorney for child.  On April 22, 2025, an Extended Temporary Order of

5

Protection was issued (O-04118-22) Ex. N. On July 24, 2025, by Decision and Order in response to plaintiff's motion, the court granted a mistrial due to ineffective assistance of counsel for dockets V-03505-22, V-03763-22, O-04118-22, O-04118-22/23A.  The trial date of September 8, 2025, remained in effect, but the Decision & Order denied all other requests for relief that Plaintiff had brought previously (for an award of interim counsel fees, disqualification of DeVall's counsel, etc.) Ex. O. On July 24, 2025, an Amended Disclosure Order was issued prior to trial scheduled for September 8, 2025. Ex. O. On August 28, 2025, a Decision and Order was issued regarding plaintiff's request for the issuance of 27 judicial subpoenas and subpoenas duces tecum (Motion #9), which were denied (V-03505-22, V-03763-23, O-04118-22, O-04118-22/23A) Ex. P.

On September 23, 2025, an Order was issued denying plaintiff's Motion #11 (V-03505-22, O-04118-22, V-03763-22) and Motion #7 (O-04118-22/23A) to adjourn, compel disclosure, strike upcoming court date, disqualify MacKay, grant sole custody, etc. Ex. Q.

On November 10, 2025, DeVall filed a motion by Order to Show Cause ("OSC") to reinstate the TOP which expired (O-04118-22/25B) Ex. R. On November 18, 2025, DeVall's OSC was heard by the court, which reinstated the TOP and extended the Temporary Order of Protection (O-04118-22) *Id*. On December 4, 2025, a Disclosure Order was issued prior to trial on March 23, 2026 (V-03505-22, V-03763-22, O-04118-22, O-4118-22/23A) Ex. S. That trial went forward as scheduled, with two days of testimony, before being adjourned until August. On January 12, 2026, by Decision and Order regarding Motion #12, plaintiff's cross-motion to dismiss, requesting the court deny DeVall's OSC and not reinstate the TOP, the Court reaffirmed its ruling and denied the motion as moot. Ex. T.

Defendant now move to dismiss Plaintiff's Complaint as against him pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

6

56243003.v1

**STANDARD OF REVIEW**

In order to survive a Motion to Dismiss, the Plaintiff's Complaint must "plead 'enough facts to state a claim for relief that is plausible on its face'" (*Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 [2007]). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (*Ashcroft v. Iqbal*, 566 U.S. 662, 678 [2009]).

While the Court should construe the factual allegations in the light most favorable to the Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" (*Id.*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" (*Id.* [citing *Twombly*, supra, 550 U.S. at 555]). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the allegations are insufficient. (*Id.* at 679 [citing Fed. R. Civ. P. 8(a)(2)]). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Id.* at 678). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. (*Id.* [internal citations and alterations omitted]). And allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are also subject to dismissal (See *Conseillant v. Lafontant*, 2009 U.S. Dist. LEXIS 61795, *3-4 (N.D.N.Y. 2009) (citing *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 [2d Cir. 2009]).

With regard to the question of subject matter jurisdiction, "[a] case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). As between the parties,

7

the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

In addition to pursuing dismissal for lack of subject matter jurisdiction on the grounds that it fails on its face to assert claims giving rise to the court's subject matter jurisdiction, "a defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976); *Dudley v. United States Atty's. Off.*, 2024 U.S. Dist. LEXIS 207723, *3-4 [D. Conn. 2024]).

### DISMISSAL OF THIS ACTION AGAINST KEVIN MACKAY, ESQ., IS WARRANTED

### A. The Case Should Be Dismissed As Against MacKay Pursuant to the Rooker-Feldman Doctrine

Dismissal of the action as against MacKay is required under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a jurisdictional rule prohibiting parties who are unsuccessful in state court proceedings from using the federal district courts as appellate courts with respect to the state court rulings.  Born of two U. S. Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District Court of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the doctrine posits that federal courts other than the Supreme Court should not sit in direct review of state court decisions unless Congress has specifically authorized such relief.  The *Rooker-Feldman* doctrine  applies if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced" (*Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).  In considering the elements of the doctrine, the Second Circuit has emphasized "that the second requirement — that the plaintiff complains of an injury *caused by* a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Id.* (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018); *Al Haqq, LLC v. City of Schenectady,* 2026 U.S. Dist. LEXIS 16546, *9 [N.D.N.Y. Jan. 29, 2026]).

Here, consideration of the allegations and the relevant history of the underlying matters in state court make clear that the *Rooker Feldman* doctrine should apply to prevent this Court from accepting jurisdiction over the claims asserted against MacKay herein.  The first element is satisfied as the claims against MacKay pertain to his involvement representing DeVall in the Family Court proceedings.  Plaintiff is using this action to contest what was and is occurring in the Family Court proceedings.  The second element is satisfied as plaintiff is seeking damages because of those orders of protection preventing access to his alleged home and property (Ex. A at ¶

9

30)."[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it" (*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Thus, "[w]here a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the [U.S.] Supreme Court can hear." *Id.* For example, in a case where voters alleged injury based on a board of elections' refusal to count certain absentee ballots, which in turn stemmed from a judgment of the New York Court of Appeals, the Second Circuit found that the *Rooker-Feldman* causation element was satisfied (*Id.* at 89 ("[T]he state-court judgment produced the Board's refusal to count the ballots, the very injury of which the voters complain"). Here, the second element is satisfied because, although plaintiff complains about MacKay, the heart of his Complaint is that the Family Court orders are preventing him from access to property. Also, child custody continues to be awarded to DeVall. Plaintiff is claiming injury due to lack of access to his child and inability to access the house that he believes he has the right to possess. It is these court orders that are the very alleged injury he complains about.

The third element is satisfied as petitioner is inviting review and rejection of those Family Court orders by initiating this action. While he is arguing that those orders violate his civil rights and constitute tortious conduct, to reach the merits in this action would require this Court to review the merits of those Family Court orders. The fourth element is met as those orders existed prior to plaintiff filing this action as demonstrated above. Those orders continue to be in force, and the

10

Family Court matter is ongoing with an upcoming trial.[1]   Accordingly, dismissal based on lack of subject matter jurisdiction is warranted.

### B.  The Complaint Fails to State a Claim for Relief As to MacKay

#### 1.        First and Second Claims

The question of subject matter jurisdiction aside, the various claims asserted against MacKay are not viable, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

With respect to the First claim, asserting a 42 USC section 1983 claim against MacKay for violation of the Fourth and Fourteenth Amendments, the claim should be dismissed as it is well established law that it does not apply to private citizens such as MacKay (who was neither operating under nor alleged to be operating under color of law).   Private attorneys are generally not state actors for purposes of § 1983 (See *O'Donoghue v. United States SSA*, 828 Fed. Appx. 784, 787 (2d Cir. 2020) (concluding that actions of private lawyers who served as defense counsel in a personal injury suit between private parties did not constitute state action). Absent state action, the plaintiff cannot maintain a Section 1983 claim (See e.g., *Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) ("Yagaloff, as a private attorney, was not a state actor; that he was licensed by the state to practice law does not render him a state actor."); *Weiguo Cai v. Civ. Ct. of City of New York*, 2023 U.S. Dist. LEXIS 35263, at \*10 (E.D.N.Y. Mar. 2, 2023) ("To the extent Plaintiff asserts these claims under Section 1983, they fail because Cohen, as a private attorney participating in the Civil Court proceedings, was not acting 'under color of' state law, as is required to assert a Section 1983 claim."), reconsideration granted on other grounds, 2024 U.S. Dist. LEXIS 1205 (E.D.N.Y. Jan. 3, 2024); *Bellevue v. City of New York*, 2025 U.S. Dist. LEXIS

---

[1] Defendant reserves the right to assert res judicata and collateral estoppel in a future motion for summary judgment.  Since the Family Court matter is proceeding to trial the issue is not yet ripe for adjudication.

56243003.v1

49338, at *5 (E.D.N.Y. Mar. 18, 2025) ("Subject to limited exceptions not applicable here, Section 1983 does not apply to claims against private individuals or organizations."']; *Romain v. State Farm Fire & Cas. Co.*, 2026 U.S. Dist. LEXIS 21129, at *6 [E.D.N.Y. Feb. 2, 2026]).  Moreover, plaintiff fails to show how MacKay violated his civil rights.  The items that he complains about all pertain to the rulings from Family Court.

As for the Second Claim, Monell does not apply to private individuals; it only applies to the government.  Dismissal is therefore warranted for this reason as well (See *Acquah v. City of Syracuse*, 2020 U.S. Dist. LEXIS 54667, at *4 [N.D.N.Y. Mar. 30, 2020]).

### 2.      Third, Fourth and Fifth Claims

Plaintiff's claim for conspiracy pursuant to 42 USC section 1985(3) is also not viable. Unlike § 1983, a conspiracy claim under § 1985 may be asserted against both public and private actors (See *Griffin v.* Breckenridge, 403 U.S. 88, 101, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971). Section 1985, however, does not "apply to all tortious, conspiratorial interferences with the rights of others." *Id.* Instead, the plaintiff must plead that defendants undertook a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws" (*Jews for Jesus, Inc. v. Jewish Community Relations,* 968 F.2d 286, 290 (2d Cir. 1992). Furthermore, "a plaintiff 'must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'" (*Gagliardi v. Village of Pawling*, 18 F.3d 188 at 194 (2d Cir. 1994) (quoting *Griffin,* 403 U.S. at 102, 29 L. Ed. 2d 338, 91 S. Ct. 1790); see also *Jews for Jesus,* 968 F.2d at 290-91).

In evaluating conspiracy claims under the Fed. R. Civ. Pro. 12(b)(6) standard, the Second Circuit has stated that complaints "containing only conclusory, vague, or general allegations that

12

the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed" (*Dwares v. City of New York*, 985 F.2d 94, 100 [2d Cir. 1993]). Although pro se plaintiffs are entitled to liberal pleading standards, they "cannot completely avoid the pleading requirements of the Federal Rules of Civil Procedure" (*Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164, 1996 WL 442797, at *7 (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Thus, a pro se plaintiff must make "an effort to provide some 'details of time and place and the alleged effect of the conspiracy.'" (*Id*. quoting 2A Moore's Federal Practice P 8.17[6], at 8-109 to 8-110 (2d ed. 1992); *Peterson v. Tomaselli*, 2004 U.S. Dist. LEXIS 19765, at *36-37 [S.D.N.Y. Sept. 29, 2004]).

Here, there is no civil rights violation claim against MacKay to even assert a section 1985 claim.  The requisite racial, or class-based, invidiously discriminatory animus necessary to such a claim is not alleged anywhere in the complaint.  And plaintiff does not meet the pleading requirement with regard to allegations of conspiracy.  Dismissal is thus warranted as to this claim.

The same is true with respect to the Fifth claim, which alleges New York common law conspiracy. "[U]nder New York law, to establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose: and (4) resulting damage or injury" (*Abacus Fed. Sav. Bank v. Lim*, 75 AD3d 472, 474, 905 N.Y.S.2d 585 [1st Dept 2010]). However, "New York does not recognize an *independent* cause of action for conspiracy to commit a civil tort" (*Abacus Fed Sav. Bank v. Lim*, 75 AD3d 472, 474, 905 N.Y.S.2d 585 [1st Dept 2010][emphasis added]). [A] cause of action sounding in civil conspiracy cannot stand alone, but stands or falls with the underlying tort" (*Romano v Romano*, 2 AD3d 430, 432, 767 N.Y.S.2d 841 [2d Dept

13

2003]); *Garcia v Banco BCT S.A.,* 2018 N.Y. Misc. LEXIS 5652, *20 (Sup. Ct., N.Y. Cnty. Nov. 28, 2018). Here, there are no underlying tort claims to support a claim of conspiracy since all should be dismissed. Plus, the elements are not met as allegations that MacKay represented his client DeVall does not purport to identify a "conspiracy" to commit tortious conduct. Thus, this claim fails as well.

As to Plaintiff's claim pursuant to 42 USC section 1986, a "claim under 42 U.S.C. § 1986 for failure to prevent the violation of a person's civil rights may not exist absent a viable section 1985 claim" (*Rizk v. City of New York*, 462 F. Supp. 3d 203, 227 (E.D.N.Y. 2020) (quoting *Faiaz v. Colgate Univ*., 64 F. Supp. 3d 336, 356 (N.D.N.Y. 2014)). Because the Complaint fails to state an underlying conspiracy claim, the section 1986 claim also fails (*See Abadi v. NYU Langone Health Sys*., 705 F. Supp. 3d 172, 187 [S.D.N.Y. 2023]).

### 3.    Sixth Claim

The Sixth Claim for defamation fails because it is time barred. Pursuant to CPLR 215(3), defamation has a one-year statute of limitations. So all claims prior to October 21, 2024 (one year from filing this action on October 21, 2025) are time-barred (Docket No. 1).

The claim also fails to comply with the heightened pleading requirements of CPLR 3016(a). "The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se" (*Whelan v Cuomo*, 220 AD3d 979, 980, 198 N.Y.S.3d 739 (2d Dep't 2023) [internal quotation marks omitted]; *see Greenberg v Spitzer*, 155 A.D.3d 27, 41, 62 N.Y.S.3d 372 (2d Dep't 2017). New York Civil Practice Law & Rules Section 3016(a) requires that, "[i]n an action for

14

libel or slander, the particular words complained of shall be set forth in the complaint." " 'Compliance with CPLR 3016 (a) is strictly enforced' " (*Lemieux v Fox*, 135 AD3d 713, 714, 22 N.Y.S.3d 581 (2d Dep't 2016), quoting *Horbul v Mercury Ins. Group*, 64 AD3d 682, 683, 881 N.Y.S.2d 911 (2d Dep't 2009); *ANS 1 Corp. v. Yosef,* 2025 N.Y. App. Div. LEXIS 6826, *3-4 [2d Dep't 2025]).

Here, plaintiff fails to meet the required elements for a defamation claim.  In fact, he identifies no particular statement allegedly made by MacKay that he claims is defamatory to support his claim.

In any event, statements and affirmations made during the course of judicial proceedings are protected from defamation claims by privilege if they are at all pertinent to the litigation (*Youmans v Smith,* 153 N.Y. 214, 219, 47 N.E. 265 [1897]). Only a minimal possibility of pertinence is required for a statement to be privileged. *Id*. And statements made in the course of litigation are privileged irrespective of the motive for which the statements are used (*Mosesson v Jacob D. Fuchsberg Law Firm,* 257 A.D.2d 381, 383, 683 N.Y.S.2d 88 (1st Dep't 1999), *lv denied* 93 NY2d 808, 713 N.E.2d 417, 691 N.Y.S.2d 382 [1999]; *Nichols v Curtis,* 2010 N.Y. Misc. LEXIS 6867, *6-7 (Sup. Ct., N.Y. Cnty. Jul. 14, 2010).

### 4.      Seventh Claim

Plaintiff's fraud and constructive fraud claim warrants dismissal as well, because it fails to comply with the heightened pleading requirements of CPLR 3016(b).  CPLR 3016(b) requires that any pleading where "a cause of action . . . is based on misrepresentation, fraud, willful default, breach of trust, or undue influence, the circumstances constituting the wrong must be stated in detail."  And no detail has been offered here.

15

In *Eurycleia Partners, L.P. v. Seward & Kissel, LLP* (12 N.Y.3d 553 (2009), the Court of Appeals discussed an appeal from the dismissal of fraud, and aiding and abetting fraud claims. The Court reiterated that the "elements of a cause of action for fraud require a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (*Id.* at 559, citing *Ross v. Louise Wise Servs., Inc.*, 8 N.Y. 3d 478, 488 (2007); *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996). In *Eurycleia*, the court explained that, while there is no requirement of "unassailable proof" at the pleading stage, "the complaint must 'allege the basic facts to establish the elements of the cause of action.'" *Id.* at 559. Pursuant to CPLR 3016(b), in order to plead fraud with particularity, the plaintiff must identify the misrepresentation that was made, when, by whom, and how it was false. *Person v. PSI Sys., Inc.*, 2021 N.Y. Misc. LEXIS 5874, *15-16 (Sup. Ct. N.Y. Cnty. Nov. 16, 2021). *See Raytheon Co. v. AES Red Oak, LLC*, 37 A.D.3d 364, 365 (1st Dep't 2007). The plaintiff must also allege that the falsity was known to the defendant, and that the defendant made the misrepresentation with knowledge of its falsity or reckless disregard for same. *Cimen v. H.Q. Capital Real Estate L.P.*, 2023 N.Y. Misc. LEXIS 1171, *5-6 (Sup. Ct., N.Y. Cnty. Mar. 13, 2023; *Bullen v. Sterling Valuation Group, Inc.*, 2020 N.Y. Misc. LEXIS 2529, *7-8 (Sup. Ct., N.Y. Cnty. Jun. 5, 2020). *See MP Cool Invs. Ltd. v. Forkosh*, 142 A.D.3d 286, 291 (1st Dep't 2016).

Here, plaintiff fails to meet the heightening pleading requirement for fraud required by CPLR 3016(b). Plaintiff fails to allege the making of a misrepresentation by MacKay, to whom, when, the falsity of the representation, his knowledge of the falsity, and circumstances evidencing that it was made with scienter – i.e., that he knew of the falsity of the statement when he made it, or recklessly disregarded the possibility that it might be false when made.

16

As to Plaintiff's claim for constructive fraud, he also again fails to plead any facts providing the requisite particularized basis for that claim. In order to assert a claim for constructive fraud, a plaintiff must establish that: (1) a representation was made, (2) the representation dealt with a material fact, (3) the representation was false; (4) the representation was made with the intent to make the other party rely upon it, (5) the other party did, in fact, rely on the representation without knowledge of its falsity, (6) injury resulted, and (7) the parties are in a fiduciary or confidential relationship (*Katz v. Katz*, 2006 N.Y. Misc. LEXIS 9556, *5 (Sup. Ct., N.Y. Cnty. Jan. 27, 2006). Unlike actual fraud, in order to establish a constructive fraud claim, plaintiff does not need to prove the element of scienter, or actual awareness on the defendant's part that false representations were made. *Id.*, *Brown v. Lockwood*, 76 A.D.2d 721 (2d Dep't 1980). However, fiduciary duty is an essential element of constructive fraud that needs to be pleaded. *Id.*

Here, dismissal is warranted as the requisite elements are again not present. There are no facts alleged providing the basis for finding the existence of a fiduciary duty between MacKay and plaintiff. In fact, they are adverse to one another (considering MacKay represents DeVall in the Family Court action and plaintiff is adverse to DeVall). Plaintiff also fails to allege any misrepresentation on the part of MacKay.

### 5.    Tenth Claim and Eleventh Claim

Plaintiff's Tenth Claim, for malicious prosecution, also fails to state a claim, as plaintiff admits he does not have a favorable termination in the underlying Family Court matter. A malicious prosecution claim requires as a prerequisite that there was a favorable termination of the alleged malicious prosecution. Without such a determination the claim warrants dismissal (See *Bright View Trading Co. v. Park*, 2004 U.S. Dist. LEXIS 18572, *16 (S.D.N.Y. Sept. 15, 2004).

17

While Plaintiff's Eleventh claim, for abuse of process, does not require a favorable determination, it is limited to claims against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process" (See *Wagner v. Hyra*, 518 F. Supp. 3d 613, 627 (N.D.N.Y. 2021) (quoting *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003); *Glover v. Onondaga Cnty. Sheriff's Dep't,* 2024 U.S. Dist. LEXIS 30083, *24 (N.D.N.Y. Feb. 22, 2024). There is no abuse of process merely because orders of protection were issued (See *Butler,* 210 AD2d at 693).

While Plaintiff claims that the orders of protection were used to obtain a collateral objective, there is no allegation that there was an effort to obtain a collateral objective outside the legitimate ends of the process. For example, there is no allegation that MacKay was pursuing orders of protection to induce Plaintiff to pay extortion, or to agree to sign a contract, or to agree to sell him a piece of land. All that is alleged is that there was an effort to pursue orders of protection for the purpose to which these types of orders are commonly put. *Cohen v. Cohen*, 210 A.D.3d 633, 634 (2d Dep't 2022) (affirming dismissal of abuse of process claim where the complaint failed to allege any improper use of an order of protection after it was issued or any collateral objective outside the legitimate purpose of the process). *See Curiano v. Suozzi*, 63 N.Y.2d 113, 116-117 (1984); *Hoffman v. Town of Southampton*, 523 Fed. Appx. 770, 771 (2d Cir. 2013).

Simply advocating for his client (DeVall) to ensure orders are in place and enforced for her protection does not constitute an abuse of process. To allow an abuse of process claim to proceed in these circumstances, without any alleged improper collateral purpose, would create a dangerous precedent as a primary purpose of a Family Court order of protection is to ensure that the party

18

being protected is not harmed and subject to abuse.   Attorneys need to be able to advocate for these orders without being inhibited by the fear of a civil suit.[2]

### 6.    Twelfth Claim

Plaintiff's Twelfth Claim, asserting conversion due to inference with his alleged right to the premises, fails as well.  "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession . . . Two key elements of conversion are (1) plaintiff's possessory right or interest in the property . . . and (2) defendant[s'] dominion over the property or interference with it, in derogation of plaintiff's rights" (*Colavito v New York Organ Donor Network, Inc*., 8 NY3d 43, 49-50, 860 NE2d 713, 827 NYS2d 96 [2006]; *Palermo v Taccone*, 79 A.D.3d 1616, 1620 [4th Dep't 2010]). Here, there is no conversion claim against MacKay because he is not alleged to be in possession of the residence.  What is keeping plaintiff out of the residence is a court order, not MacKay. *Old Republic Natl. Tit. Ins. Co. v. Cardinal Abstract Corp*., 14 A.D.3d 678, 680 (2d Dep't 2005) (concluding that conversion claim should have been dismissed because the complaint failed to allege facts establishing that the appellants had title, possession, or control over any money or property allegedly converted by them); *Institute for Am. Musical Theatre LLC v. Drost*, 2025 N.Y. Misc. LEXIS 293, *4 (Sup. Ct., N.Y. Cnty. Jan. 19, 2025) (dismissing conversion claim against defendant because plaintiff failed to allege that defendant had dominion over the property or interfered with it) (citing *Mut. Benefits Offshore Fund., Ltd. v. Zeltser*, 172 A.D.3d (1st Dep't 2019) (dismissing conversion claim "for the simple

---

[2] The caselaw references uncertainty on whether Family Court matters fall into civil or criminal contexts for a section 1983 claim (See *Wagner*, supra).  But Plaintiff is not making a section 1983 claim for abuse of process.  Regardless of whether abuse of process applies under state law to a Family Court matter, the elements to support this claim are not present.

56243003.v1

reason that this defendant did not exercise control over plaintiff's funds"). Dismissal is thus warranted for this claim as well.

### 7.    Fourteenth Claim

In his Fourteenth claim for relief, Plaintiff alleges that DeVall owed him fiduciary duties arising from a "confidential relationship/joint venture" which DeVall allegedly breached by excluding plaintiff from it, among other things. But the pleadings fail to make clear what the confidential relationship/joint venture is that MacKay allegedly owed Plaintiff a fiduciary duty of care with respect to, in his capacity as counsel for Plaintiff's adversary in their legal dispute, and for that reason also must be dismissed.

A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that plaintiff suffered damage as a result of the breach. *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003), *citing S&K Sales Co. v. Nike, Inc*., 816 F.2d 843, 847-848 (2d Cir. 1987). A person knowingly participates in a breach of fiduciary duty only when he or she provides "substantial assistance" to the primary violator. *Baron v. Galasso*, 83 A.D.3d 626, 629 (2d Dep't 2011). Pleading of "substantial assistance" requires pleading of an affirmative act on the defendant's part, as "mere inaction" can constitute substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff. *Id*. Plaintiffs are not required to allege that the aider and abettor had an intent to harm, but there must be an allegation that such defendant had actual knowledge of the breach of duty. *Kaufman*, at 125. Constructive knowledge, an allegation that the defendant "knew or should have known" about the breach of duty is insufficient to support such a claim. *Baron*, at 629.

56243003.v1

Here, Plaintiff fails to plead what MacKay did wrong to even premise this claim. None of the elements are satisfied by the pleadings. Merely because MacKay advocated for his client and obtained judicial relief that Plaintiff is not happy with is not sufficient to sustain a claim for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. In the absence of the pleading of a factual basis for concluding MacKay owed a fiduciary duty to plaintiff in the first place, or the fiduciary duty that was owed by someone else the breach of which he aided and abetted, the claims fail at the starting gate.

### 8.    Sixteenth Claim

Plaintiff's sixteenth claim for relief, alleging that all defendants engaged in extreme and outrageous conduct in the alleged self-help eviction and forced expulsion, which as a result, "intentionally or recklessly" caused plaintiff to suffer severe emotional distress and damages, is also insufficient as a matter of law.

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress. *Eskridge v. Diocese of Brooklyn*, 210 A.D.3d 1056, 1057 (2d Dep't 2022); *Klein v. Metropolitan Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dep't 2012). In order to state a cause of action to recover damages for intentional infliction of emotional distress, the pleading must allege "conduct that has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Ratto v. Oliva*, 195 A.D.3d 870, 872-873 (2d Dep't 2021); *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Conclusory assertions are insufficient to set forth a cause of action for IIED (*Redd v. Brooklyn Friends Sch.*, 238 A.D.3d 1181, 1185 (2d Dep't 2025).

21

Here, looking at what has been alleged, it is clear that no viable claim exists.  First, pursuant to CPLR 215(3) intentional infliction of emotional distress has a one-year statute of limitations.  So, all claims prior to October 21, 2024 (one year from filing this action on October 21, 2025) are time-barred.  In any event, MacKay simply advocating for his client is not extreme and outrageous conduct (*See, e.g. Tueme v Lezama,* 217 A.D.3d 715, 718 [2d Dep't 2023] (finding that allegations that defendants (and their counsel) made false allegations of child abuse and criminal conduct to extract an "excessive financial settlement" and divorce, were not sufficiently outrageous to state a claim for IIED)*; Kaye v Trump,* 58 A.D.3d 579, 579 [1st Dep't 2009] (allegations that "defendants variously made rude remarks to and about her, commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her daughter by attempting to instigate her arrest" were not sufficiently "outrageous" for purposes of IIED).  What plaintiff is complaining about pertains to the Family Court orders not MacKay.

### 9.    Seventeenth Claim

The Seventeenth Claim alleges wrongful/unlawful eviction and trespass and seeks treble damages (RPAPL §§ 711, 768, 853). Plaintiff alleges that he was a lawful occupant of the home which defendants dispossessed him of, without a warrant of eviction or court order, and thus plaintiff is entitled to statutory relief, including treble damages. This claim is also insufficient.

To sustain a claim for unlawful eviction, a plaintiff must prove that he was "actually evicted, i.e., physically expelled or otherwise physically excluded from the premises," or that he was "constructively evicted, i.e., that [Defendants] committed wrongful acts that substantially and materially deprived him of the beneficial use and enjoyment of the premises" (*Fronczak v. Town of Orchard Park*, 65 Misc.3d 246, 250 (Sup. Ct., Erie Cnty. Jul. 16, 2019).

22

For RPAPL § 711 and 853 to apply, a plaintiff must be a tenant, permanent tenant or lawful occupant (*See Tantaro v. Common Ground Community Hous. Dev. Fund, Inc*., 2015 N.Y. Misc. LEXIS 824, *16-17 (Sup. Ct., N.Y. Cnty. Mar. 17, 2015). RPAPL § 768 provides that it shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit . . . by . . . engaging in a course of conduct which prevents or is intended to prevent such occupant from lawful occupancy or to induce the occupant to vacate, including, but not limited to, . . . changing the lock on such entrance door without supplying the occupant a key (*Cohen v. Restuccia*, 2021 N.Y. Misc. LEXIS 1739, *7 (Sup. Ct., N.Y. Cnty. Apr. 8, 2021).

RPAPL § 853 provides that "[i]f a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages." In order to recover treble damages for unlawful eviction under RPAPL § 853, a plaintiff must prove that "force or fear of personal violence was used to accomplish the eviction." *Id*. Punitive damages are only awarded when there is a showing that a defendant's actions are "heinous or reprehensible." *Id*., *Spiegel v. Goodman*, 204 A.D.2d 430, 614 (2d Dep't 1994).

Here, MacKay did not evict plaintiff from the premises. The Court order of protection warranted a full stay away from DeVall. It is the order of protection that resulted in Plaintiff being unable to access the residence not MacKay. Thus, there simply is no basis for this claim against MacKay as well.

**10.    Nineteenth Claim**

Finally, the Nineteenth claim, pursuant to N.Y. Jud. Law 487, fails to state a claim because it fails to plead scienter, or that Plaintiff was proximately caused to be damaged as a result of MacKay's allegedly deceitful conduct.

23

56243003.v1

Plaintiff alleges that MacKay "engaged in deceit or collusion with intent to deceive the court or a party by making knowingly false material statements and by omissions calculated to mislead." In support of this allegation, Plaintiff cites MacKay's filing and maintenance of the Family Offense Petition on DeVall's behalf to procure the ex parte Temporary Order of Protection to perpetuate plaintiff's exclusion from his home.

The problem with this claim is that pursuant to Judiciary Law § 487 " '[a] violation of Judiciary Law § 487 requires an intent to deceive' " (*see Guliyev v Banilov & Assoc., P.C.*, 221 AD3d 589, 591, 198 N.Y.S.3d 400 (2d Dep't 2023*)* [quoting *Moormann v Perini & Hoerger*, 65 AD3d 1106, 1108, 886 N.Y.S.2d 49 [2d Dep't 2009]). And "'[a]llegations regarding an act of deceit or intent to deceive must be stated with particularity' " (*Guliyev,* 221 AD3d at 591, quoting *Bill Birds, Inc. v Stein Law Firm, P.C.*, 164 A.D.3d 635, 637, 82 N.Y.S.3d 91 [2d Dep't 2018], *affd* 35 NY3d 173, 126 N.Y.S.3d 50, 149 N.E.3d 888 [2020]). Further, " 'an injury to the plaintiff resulting from the alleged deceitful conduct of the defendant attorney is an essential element of a cause of action based on a violation' of Judiciary Law § 487" (*Maroulis v Sari M. Friedman, P.C.*, 153 A.D.3d 1250, 1252, 60 N.Y.S.3d 468 [2d Dep't 2017] [alteration omitted], quoting *Rozen v Russ & Russ, P.C.*, 76 AD3d 965, 968, 908 N.Y.S.2d 217 [2d Dep't 2010]). "Thus, to state a cause of action alleging a violation of Judiciary Law § 487, the plaintiff must 'plead allegations from which damages attributable to the defendants' conduct might be reasonably inferred' " (*Maroulis v Sari M. Friedman, P.C.*, 153 AD3d at 1252, quoting *Mizuno v Nunberg*, 122 A.D.3d 594, 595, 996 N.Y.S.2d 301 [2d Dep't 2014]).

Here, the plaintiff has failed to allege sufficiently specific facts from which it could be reasonably inferred either that MacKay acted with the requisite degree of scienter or that the alleged acts of deceit were the proximate cause of any injury to the plaintiff (*see Pinkesz Mut.*

24

*Holdings, LLC v Pinkesz*, 198 A.D.3d 693, 697-698, 156 N.Y.S.3d 216 [2d Dep't 2021]; *Sammy v Haupel*, 170 A.D.3d 1224, 1225, 97 N.Y.S.3d 269 [2d Dep't 2019]). Dismissal is thus warranted of Plaintiff's Judiciary Law claim as well.

### 11.    Punitive Damages

Lastly, regardless of how the Court rules otherwise, Plaintiff's claim to entitlement to punitive damages must be dismissed.

The threshold for establishing punitive damages in New York is "demanding," requiring the plaintiff to demonstrate that the defendant's conduct was so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of other and that the conduct demonstrates a high degree of moral culpability (See *Geris v. DiSilva Taunton Express, Inc.*, 2021 U.S. Dist. LEXIS 104286, *40-41 [W.D.N.Y. 2013]). Based on the allegations in the First Amended Complaint, there is no basis for punitive damages in this matter. MacKay simply advocating for his client does not suffice to warrant punitive damages.

### CONCLUSION

For the reasons stated above, it is respectfully submitted that an Order is warranted dismissing this action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, due to lack of subject matter jurisdiction and, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based on failure to state a claim. In any event, the demand for issuance of punitive damages should be stricken from the Complaint.

Dated: March 30, 2026

Jonathan M. Bernstein, Esq.

25

56243003.v1